# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JULIAN A. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1367-KAJ |
| | ) | |
| STANLEY TAYLOR, individually and in | ) | |
| his official capacity as Commissioner of | ) | |
| the Delaware Department of Correction; | ) | |
| THOMAS CARROLL, individually and in | ) | |
| his official capacity as Warden of the | ) | |
| Delaware Correctional Center at Smyrna; | ) | |
| DR. ALIE, individually and in her official | ) | |
| capacity as Medical Director at DCC | ) | |
| Smyrna;  RN IHOMA, individually and in | ) | |
| her official capacity as Registered Nurse at | ) | |
| DCC Smyrna, | ) | |
| | ) | |
| Defendants. | ) | |

### STATE DEFENDANTS MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR JOINT MOTION TO DISMISS PURSUANT TO RULES 12 (B)(1) AND 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

#### STATEMENT OF FACTS

1)      Julian A. Miller, (hereinafter "Plaintiff"), is an inmate incarcerated with the State of Delaware Department of Correction (hereinafter "DOC") at the Delaware Correctional Center (hereinafter "DCC").

2)      On or about October 18, 2004, Plaintiff's complaint was filed with the Federal District Court for the District of Delaware against Defendants Stanley Taylor and Thomas Carroll ("State Defendants").  (D.I. #  2).  Defendant Taylor executed a waiver of service on or about May 12, 2005.  Defendant Carroll executed a waiver of service on or about May 9, 2005. The State Defendants have timely responded to the complaint with a joint motion to dismiss pursuant to Rule 12.    This is a Memorandum of Points and Authorities in support of their Motion to

Dismiss.

3)      It appears that Plaintiff brings this suit pursuant to 42 *U.S.C.* § 1983 alleging that he received inadequate medical care in relation to an alleged podiatric condition.[1]   Plaintiff apparently disagrees with the course of his medical treatment as provided by the Department of Correction's medical provider, First Correctional Medical.   Other than in reference to letters allegedly sent to the Defendants, Plaintiff fails to mention any fact which involves the State Defendants at all.   Plaintiff alleges no conduct or knowledge on the part of the moving defendants and fails to allege any nexus between their activities and the Plaintiff's alleged injuries. The Plaintiff fails to legally and factually support his claims against the State Defendants.

<u>MEMORANDUM OF LAW</u>

State Defendants assert that, accepting the allegations in the complaint as true and drawing all reasonable factual inferences in favor of Plaintiff, the Court cannot grant relief under any set of facts that could be proved by Plaintiff.   They also allege that the District Court lacks subject matter jurisdiction over any official capacity claim against them.   Accordingly, State Defendants are entitled to dismissal of the complaint against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

In deciding a motion to dismiss, the Court must accept as true all material allegations of the complaint, and it must construe the complaint in the light most favorable to the plaintiff.   *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). "The complaint should be dismissed only if, after accepting as true all of the facts alleged in the

---

[1] Plaintiff repeatedly refers to "dropped arches" and pain radiating from the bottoms of his feet to his calves.  From the limited information attached to the complaint, it appears that Plaintiff was diagnosed with post-therpetic neuralgia (a nerve condition resulting from shingles).  *See* http://www.emedicine.com/neuro/topic317.htm Such a diagnosis would be consistent with the information indicating Plaintiff was prescribed the drug Gabapentin (also known as Neurontin).

complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Though *pro se* pleadings are entitled to leniency, such pleadings must still place a defendant on notice as to what wrong he has supposedly committed. *Riley v. Jeffes*, 777 F.2d 143, 148 (3d Cir. 1985) ("[I]f a plaintiff presents only vague and conclusory allegations, the complaint should be dismissed.").

Plaintiff's allegations involve his claim that he received substandard medical treatment for foot pain. (D.I. # 2, *passim*). Plaintiff alleges that, pursuant to his requests, he was seen by medical staff on several occasions in relation to complaints about his feet. Plaintiff alleges he was seen by both doctors and nurses. He alleges that he was given medication to treat his pain, provided therapeutic support arches and alleges that there was a recommendation to provide him therapeutic shoes. The absence of any factual allegation demonstrating movants' deliberate indifference is a clear indication that Plaintiff is actually alleging a medical negligence claim.

Plaintiff's claims against the State Defendants are based on pure legal conclusion without any factual support.[2] Plaintiff states, in the absence of any supporting fact, that the State Defendants were "deliberately indifferent." (D. I. # 2). No facts are stated to flesh out these bald legal conclusions.

The gravamen of Plaintiff's complaint is that, despite the medical treatment he admittedly received, he is not satisfied with the results. Nowhere does he claim that the State Defendants denied or delayed his medical care. Similarly, Plaintiff does not allege that the State Defendants personally knew or had any reason to know that Plaintiff was dissatisfied with his medical care

---

[2] When deciding a motion to dismiss, the Court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

or were aware that Plaintiff was receiving substandard medical care.[3]

## I.  THE PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE STATE DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES.

### A. Plaintiff fails to allege any personal involvement by State Defendants in the alleged incidents and seeks to hold them vicariously liable for the alleged negligence of others.

Regardless of the type of § 1983 claim, the plaintiff must show personal involvement by the defendants to succeed.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Without identifying how they participated in, personally directed, or acquiesced in the events which Plaintiff claims deprived him of constitutional rights, State Defendants Taylor and Carroll cannot be held liable and dismissal is appropriate.  *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990); *Rode, supra*.  Commissioner Stanley Taylor and Warden Thomas Carroll appear to be named in the complaint solely because of their positions as supervisory prison officials.[4]  However, it is well established that the theories of *respondeat superior* and vicarious liability are not acceptable bases for liability under § 1983.  *See, e.g., Polk County v. Dodson*, 454 U.S. 312, 325 (1981).

In his statement of claim, Plaintiff fails to make any allegations specifically against either Stanley Taylor or Thomas Carroll.  (D.I. # 2).[5]  The complaint is in fact devoid of any allegations that State Defendants had any personal knowledge of or involvement in the medical care of the Plaintiff, and thus fails to allege any facts that could establish liability against the State Defendants under §1983.  Based on the above, the State Defendants ask the Court to dismiss

---

[3] Plaintiff does allege that the State Defendants "knew about Dr. Alie's 'money saving' policies *or should have known* in the proper exercise of their official duties."  (D.I. # 2 at ¶ 44)(emphasis added).  The Complaint does not elaborate on what is meant by this allegation.  Of course, it is axiomatic that a negligence claim cannot amount to deliberate indifference, a necessary component of liability under 42 *U.S.C.* § 1983.

[4] At ¶ 3 and 4 of his complaint (D.I. # 2), Plaintiff alleges that the State Defendants are present in this litigation because they are "legally responsible" for the operation of the Department of Correction, DCC, and the "welfare of all the inmates of that prison."  Plaintiff, therefore, concedes his claims against the State Defendants are based on a theory of vicarious liability.

[5] Plaintiff alleges that he wrote letters to State Defendants, however, it appears that these letters were not written until months after Plaintiff became dissatisfied with his medical care.

Plaintiff's action for failure to allege any personal involvement in Plaintiff's medical care, and thus, failure to state a claim against them.

### B.  Plaintiff fails to allege facts that could lead to an inference of deliberate indifference to a serious medical need by State Defendants

Plaintiff fails to plead any fact from which a jury could infer State Defendants were deliberately indifferent to a serious medical need of the Plaintiff.  Although complaints by *pro se* incarcerated plaintiffs are read liberally with the understanding that these plaintiffs are normally at an informational disadvantage, the Third Circuit has ruled that such leniency is inapplicable where the complaint "does not so much as suggest that [a defendant] was aware of the alleged inadequacies in [the plaintiff's] medical treatment." *Spruill v. Gillis*, 372 F.3d 218, 236 FN 12 (3d Cir. 2004).  The same scrutiny is applicable in this case.

The essence of Plaintiff's complaint is that medical personnel have denied him specific treatments he requested for an alleged podiatric condition.  Clearly, Plaintiff's dispute is with the medical treatment provided by licensed doctors and nurses; a complaint which is at best a medical malpractice claim inappropriate for a § 1983 action.  To succeed in an Eighth Amendment claim of inadequate medical treatment, "a prisoner must show more than negligence; he must show 'deliberate indifference' to a serious medical need." *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976) and *Monmouth County Correctional Institution Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988)).  "[T]he law is clear that simple medical malpractice is insufficient to present a constitutional violation."  *Id.* (internal citations omitted).

To successfully pursue a § 1983 claim against a supervisory prison official, the plaintiff must identify with particularity what the prison official failed to do that demonstrates deliberate indifference and demonstrate a close causal relationship between the deficiency and the ultimate

injury. *See Sample v Diecks*, 885 F.2d 1099, 1116-1118 (3d Cir. 1989); *See also Wilson v. Seiter*, 501 U.S. 294 (1991). The Supreme Court requires that the plaintiff demonstrate the prison official acted recklessly by consciously disregarding a substantial risk of harm to establish "deliberate indifference" on the part of that official. *See Farmer v. Brennan*, 511 U.S. 825, 837-840 (1994) (adopting subjective recklessness standard from criminal law as the test for deliberate indifference under the Eighth Amendment). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See Farmer*, 511 U.S. at 837.

The Third Circuit has found "deliberate indifference" to a serious medical need in circumstances where the prison official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; (3) prevents a prisoner from receiving needed or recommended medical treatment; or (4) "persists in a particular course of treatment in the face of resultant pain and risk of permanent injury." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Lanzaro*, 834 F.2d at 346-47, and *White v. Napoleon*, 897 F.2d 103, 109-11 (3d Cir. 1990)). Plaintiff has not alleged that the State Defendants engaged in any of these enumerated courses of action.

The instant complaint fails to allege facts that could lead to an inference of deliberate indifference by the prison officials or any causal connection to any alleged injury to Plaintiff. Plaintiff does not allege any obstruction by the State Defendants in his efforts to receive treatment or any interference with the recommendations of medical personnel. To the contrary, Plaintiff admits he was seen by several medical personnel in response to his verbal requests and "sick call slips" (D.I. # 2). The complaint outlines several contacts with prison medical

personnel and Plaintiff's interactions with them.  There is no allegation that State Defendants interfered with the process of plaintiff's medical treatment in any way.

Even if the Court were to construe Plaintiff's vague assertions to include an allegation of notice to Taylor and Carroll specifically, the simple factual allegation that plaintiff sent letters or communicated verbally with Department of Correction employees could not be enough, even if true, to establish supervisory liability on the part of either of the State Defendants.  *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (affirming summary judgment in favor of prison warden and commissioner of corrections where the only allegations against them were failure to respond to letters about inmate medical complaint); *See also Waters v. Evans*, No. 01-145-SLR, 2001 WL 1502870 (D. Del. Nov. 19, 2001) (finding no deliberate indifference by prison commissioner and prison warden where there was no evidence they had personal involvement in or knowledge of the alleged inadequate medical care).

The Third Circuit recently affirmed the grant of a motion to dismiss on behalf of a non-medical prison official where the plaintiff failed to plead facts that could support the requisite scienter requirement of an Eighth Amendment medical treatment claim against the official. *Spruill v. Gillis*, 372 F.3d 218, 235, 236 (3d Cir. 2004)(citing *Durmer v. Carroll* in concluding that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirements of deliberate indifference.").  It is clear that the Third Circuit intended to take prison staff and administrators out of the arena of prisoner medical claims in the absence of specific facts demonstrating their deliberate indifference.

In *Spruill*, the Third Circuit affirmed dismissal of a complaint against a correctional lieutenant who supervised the unit in which the plaintiff inmate was housed, an officer who had

significant direct interaction with the plaintiff about his medical complaints. *Spruill*, 372 F.3d at 236. The Court found that although Plaintiff had alleged that the lieutenant failed to summon immediate medical attention after the plaintiff told the officer he had suffered injuries in a fall, such action did not amount to deliberate indifference where plaintiff had already signed up for a sick call and his condition was not "dire and obvious." *Spruill*, 372 F.3d at 223, 236. The *Spruill* Court also distinguished the responsibilities of the prison official in the time period *before* the inmate first received medical care from the time period *after* the inmate began receiving care. The Third Circuit cited *Durmer* and expressed the important policy reasons for placing legal responsibility for medical decisions on trained medical personnel. *Spruill*, 372 F.3d at 326, 327.

> If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability.

*Spruill,* 372 F.3d at 236.

Plaintiff's allegations against the State Defendants fall squarely into the situation described in *Spruill.* State Defendants were made aware by the Plaintiff that he was under the care of the prison's medical staff. In the instant case, Plaintiff fails to plead any facts that could support a conclusion that either State Defendant had "a reason to believe (or actual knowledge) that prison doctors or their assistants [were] mistreating (or not treating) a prisoner…." *Id.* Plaintiff does not allege any direct contact between him and either of the State Defendants,

unlike the plaintiff and the prison official in *Spruill*.  In addition, Plaintiff does not allege any medical expertise on the part of either State Defendant or any facts that could support a conclusion that the State Defendants are qualified to make any decisions about Plaintiff's medical treatment or override the medical decisions of the prison's medical staff.  The complaint offers no facts to indicate the normal division of labor within a prison, in which responsibility for medical treatment is delegated to physicians, does not apply to this case.  In sum, State Defendants have met their obligations by providing access for the Plaintiff to licensed physicians and nurses, and they have in place a system whereby necessary medical treatment is provided. They have no duty to second guess medical determinations by licensed medical professionals, and as the *Spruill* decision suggests, burdening prison officials with such a responsibility could ultimately undermine the medical care provided to prisoners.

Under the principles set forth by the Supreme Court and the Third Circuit, Plaintiff's complaint fails to allege facts that could lead to an inference of deliberate indifference to a serious medical need by the State Defendants.  Accordingly, they respectfully request this Honorable Court to dismiss the complaint against them for failure to state a claim.

## II. THE PLAINTIFF'S OFFICIAL CAPACITY CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1).[6]

### A.    Standard of Review.

When reviewing a facial attack on subject matter jurisdiction, the Court is required to accept all allegations in the complaint as true.  *See Mortenson v. First Federal Sav. and Loan Assoc.*, 540 F.2d 884, 891 (3d Cir. 1977).  A motion under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of a plaintiff's complaint.   In the case *sub judice*, the Court is without jurisdiction to hear a claim against the State of Delaware or an official-

---

[6] The Plaintiff specifically sues State Defendants in their official and individual capacities.  *See* D.I. # 2 at ¶ 7.

capacity suit by operation of the Eleventh Amendment to the United States Constitution.

**B.      The District Court lacks subject matter jurisdiction over Plaintiffs' claims because they are barred by the Eleventh Amendment to the United States Constitution.**

The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." While the Amendment does not facially bar suits against the State by its citizens, the United States Supreme Court has held that in the absence of consent, a state is "immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts' jurisdiction under Article III." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44  (1996).  "The Eleventh Amendment limits federal judicial power to entertain lawsuits against a State and, in the absence of congressional abrogation or consent, a suit against a state agency is proscribed." *Neeley v. Samis*, 183 F. Supp. 2d 672, 678 (D. Del. 2002) (*quoting Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98-100 (1984)). The United States Congress can waive the state's sovereign immunity, and therefore, its Eleventh Amendment immunity through the Fourteenth Amendment; however, only a clear indication of Congress' intent to waive the states' immunity will produce this result. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996).  No such clear intent can be seen in 42 *U.S.C.* §1983.  In fact, a review of the statute demonstrates that Congress did not intend to waive the states' immunity. The statute facially allows suits only to be brought against "persons."  42 *U.S.C.* §1983.  The State Defendants, in their official capacities, are not  "person[s]" as contemplated by 42 *U.S.C.* §

1983.

> [T]he Supreme Court has held that neither a State nor its officials acting in their official capacities are 'persons' under §§ 1983. *Ospina v. Dep't of Corrections, State of Del.,* 749 F.Supp. 572, 577 (D.Del.1991) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). The Department of Correction, as a state agency, is not a person under §§ 1983. Consequently, '[a]bsent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant.' *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir.1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam)). Furthermore, the State of Delaware has not waived its sovereign immunity under the Eleventh Amendment. *See Ospina v. Dep't of Corrections*, 749 F.Supp. at 579.

*Church v. Department of Correction*, No. 00-085-SLR, 2002 WL 31927434, at *4 (D. Del. Dec. 18, 2002). The Federal District Court is without subject matter jurisdiction to hear Plaintiff's official-capacity claims against the State Defendants.

## III.    CONCLUSION

Plaintiff attempts to hold non-medical prison administrators liable for alleged medical negligence in the absence of any factual allegation indicating that they were deliberately indifferent. Based on the above stated arguments, the State Defendants respectfully request that this Honorable Court dismiss Plaintiff's claims against them.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/S/ Aaron R. Goldstein
_____
Aaron R. Goldstein    #3735
Deputy Attorney General
Carvel State Office Building
820 N.  French Street, 6th floor
Wilmington, DE 19801
(302) 577-8308
Attorney for Defendants Taylor and Carroll.

DATE:  June 21, 2005

### CERTIFICATE OF MAILING AND/OR DELIVERY

I hereby certify that on June 21, 2005, I electronically filed Defendants' Motion to Dismiss with the Clerk of the Court using CM/ECF which will send notification of such filing to the following: (incarcerated *pro se* matter). I hereby certify that on June 21, 2005, I have mailed by United States Postal Service, the attached document to the following non-registered participant: Julian A. Miller, S.B.I. # 393626, Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE 19977.

/s/ Aaron R. Goldstein
Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
aaron.goldstein@state.de.us