Julian A. Miller
   393626
Delaware Correctional Center
   1181 Paddock Road
Smyrna, Delaware 19977

In propria personam

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JULIAN A. MILLER,<br><br>           Plaintiff,<br><br>   v.<br><br>STANLEY TAYLOR, individually and in his official capacity as Commissioner of the Delaware Department of Correction:<br>THOMAS CARROLL, individually and in his official capacity as Warden of the Delaware Correctional Center at Smyrna:<br>DR. ALIE, individually and in her official capacity as Medical Director at DCC Smyrna:<br>RN IHOMA, individually and in her official capacity as Registered Nurse at DCC Smyrna:<br><br>           Defendants, | COMPLAINT<br><br>Civil Action No. 04cv1367<br>(CIVIL RIGHTS) |

**AMENDED COMPLAINT**

I.      JURISDICTION

1. This is a civil action authorized by 42 U.S.C. sec. 1983 to redress the deprivation, under color of State Law, of rights secured by the constitution of the United States. The court has jurisdiction under 28 U.S.C. sec. 2201 and 2202.

II.      PLAINTIFF

2. Plaintiff JULIAN MILLER, is and was at all times mentioned herein, prisoner of the state of Delaware, in the custody of the Department of Corrections of the State of

Delaware. He is currently confined in the Delaware Correctional Center, Smyrna, Delaware

### III. DEFENDANTS

3. Defendant STANLEY TAYLOR is the Commissioner of the Delaware Department of Corrections. He is legally responsible for the overall operation of the department of each institution under it's jurisdiction including DCC Smyrna.

4. Defendant THOMAS CARROLL is the Warden of DCC Smyrna. He is legally responsible for the operation of DCC Smyrna and the welfare of all the inmates of that prison

5. Defendant DR. ALIE is the Director of the medical staff at DCC Smyrna. She is legally responsible for the overall operations of the medical department and for the health of all the inmates of that prison department and for the health of all the inmates of that prison

6. Defendant RN IHOMA is a registered nurse of the medical staff at DCC Smyrna. She is legally responsible for the health of those inmates who comes under her direct supervision

7. Each defendant is sued individually and in his or her official capacity at all times mentioned in this complaint. Each defendant acted under the color of Delaware Law

### IV. FACTS

8. On or about January 15, 2004, Plaintiff MILLER's feet began to ache in and around the arch area. Plaintiff MILLER began soaking his feet at night and massaging them to sooth the ache. This worked for a week or two.

9. When Plaintiff MILLER realized that the pain was getting worse he submitted a sick-call slip to be seen at medical. The first slip was admitted Jan. 27th, 2004. It has not been returned as of 2-8-2005. It should be a part of Plaintiff's medical files.

10. On Feb. 4th, 2004, Plaintiff MILLER was seen by Defendant RN IHOMA who upon hearing symptoms and nature of plaintiff's complaint, immediately stated that "we do

not issue sneakers or corrective shoes anymore". All actions henceforth mentioned and documented herein is consistent with the implementation and follow-through of this practive of policy.

11. On Feb. 16th, 2004, Plaintiff MILLER submitted a second sick- call slip explaining his inability to sleep or walk properly due to the pain and suffering that he was experiencing as a result of this condition not being treated.

12. The sick-call procedure is as follows: A sick- call slip is submitted and this inmate is put on a list to appear at the infirmary to see a nurse or doctor. In this instance, Plaintiff was not put on a list and therefore couldn't appear at the hospital. Instead, defendant RN IHOMA mailed plaintiff a reply which stated he'd already had been seen on this issue; even though nothing was done the first time. SEE EXIBIT A

13. A copy of this and all sick – call slips, letters, requests and grievances are included in this complaint as EXIBITS A-Z and used as confirmation of statements herein made.

14. On Feb. 22nd, 2004, Plaintiff MILLER submitted a 3rd sick – call slip alerting the medical staff to the fact that Tylenol prescribed by Defendant RN IHOMA had absolutely no affect on his pain. It also made reference to plaintiff MILLER not getting proper sleep at night because of the pain. SEE EXIBIT B

15. On March 4th, 2004, Plaintiff MILLER submitted a grievance complaining about his condition worsening. It also mentioned that arch supports supposedly ordered on Feb. 4th, had not been received by plaintiff MILLER as of yet. SEE EXIBIT C1 and C2

16. On March 9th, 2004, Plaintiff MILLER submitted a 4th, sick – call slip complaining about not being able to get proper sleep because of pain. IT also mentions that Plaintiff hadn't received arch supports ordered on 2 – 4 – 04. SEE EXHIBIT D

17. On March 13th, 2004 Plaintiff Miller wrote a letter to defendant and Medical Director DR. ALIE to acquaint her with his situation. SEE EXIBIT E  The details of that letter included: the pain being experienced; the progression of the injury; the fact that

plaintiff submitted sick-call slips, a grievance, and had been seen by defendant RN IHOMA, who had supposedly scheduled plaintiff to see her (defendant DR. ALIE) as seen in EXIBIT C2; and that plaintiff felt to be getting "inadequate treat-ment". as documented in EXIBIT E

18. Plaintiff MILLER received a reply to this letter two months later statin that he would be seen (or scheduled to be seen) by defendant DR. ALIE soon as recorded on the back of EXIBIT E

19. On March 21st, 2004, Plaintiff Miller submitted a fifth sick-call slip which detailed the pain he was having and the fact that the swelling had increased and now included Plaintiff's feet and ankles. This sick-call slip was not returned to plaintiff and should be included in plaintiff's medical records.

20. On March 25th, 2004, plaintiff MILLER was called before RN TERRY HASTINGS who was sent to mediate a grievance filed on March 4th, 2004. Two days prior to this meeting Plaintiff was given some hard plastic arch supports that has supposedly been ordered in January, but by now Plaintiff's arches had completely fallen and those arch supports actually added to the pain plaintiff was experiencing. Plaintiff was told to try arch supports for a month or two and if they didn't help, to file another grievance. SEE EXIBIT C2

21. On April 7th, 2004, Plaintiff MILLER submitted a 6th sick-call slip which detailed the pain and swelling of his feet, ankles and legs up to his calves. It also mentioned that Plaintiff had yet to receive a response to the sick-call slip that was submitted on March 21st. It was not returned to Plaintiff and should be a part of plaintiff's medical records.

22. On April 19th, 2004, Plaintiff MILLER submitted a second grievance  The details of that grievance included:  Plaintiff's conren that the situation going untreated may have led to something else and Plaintiff MILLER requested to be examined to confirm or deny such concerns.  It also mentioned pain, not being able to sleep

properly and the fact that plaintiff was told he would be scheduled to see defendant and Medical Director DR. ALIE. SEE EXIBIT F1 andF2

23. Plaintiff will note at this time that it has been 3 months since the first or initial complaint and plaintiff haven't yet been visually examined, even amidst the many complaints already filed.

24. The grievance procedure (according to prison guidelines) should go as follows: A grievance is submitted and within 10 working days inmate should go before an intermediate who attempt to resolve the grievance before it goes to the next level. If intermediate cannot resolve grievance, their job or duty is to referrer it to a Level 2 hearing which go before a board or committee who either confirm or deny complaining party's request.

25. On May 24th, 2004, Plaintiff MILLER was called to medical to see defendant DR. ALIE- Medical Director; two months after plaintiff wrote her a letter describing his situation. Plaintiff MILLER began to redirect defendant DR. ALIE's attention to his condition because; 1) he knew that she dealt with many patients and 2) it had been 2 months since his letter had been wrote to her. About 2 sentences into plaintiff's explanation, defendant DR. ALIE interrupted abruptly and said " we are not here to talk about your feet". Plaintiff then showed defendant DR. ALIE the leter that he has written to her (EXIBIT E) and the grievance that said he was scheduled to see her (EXIBIT C2). DR. ALIE then (without any examination) told plaintiff MILLER that " he didn't qualify for sneakers or orthopedic shoes". Plaintiff MILLER asked DR. ALIE to put that in writing and she said "sure". SEE EXIBIT C2

26. On May 7th, 2004, Plaintiff was called to medical to see RN EDITH RIVERA, who was the grievance mediator that week. At this time RN EDITH RIVERA made plaintiff aware that DR. ALIE had diagnosed his condition as postherpetic neuralgia and had issued and ordered a medication called gaba pentin. All this without ever examining plaintiff's feet or discussing it at all with plaintiff. This diagnosis was

written in plaintiff's files after plaintiff left defendant DR. ALIE's office on May 4th, 2004. SEE EXIBITS C2 and F2

27. On May 14th, 2004 Plaintiff MILLER submitted a third grievance which mentioned problems walking and plaintiff requested to go to an outside hospital. Exibits G1,G2, and G3

28. On May 14th, 2004, also; Plaintiff MILLER wrote a letter to the following authorities: 1) DCC Commissioner STANLEY TAYLOR; 2) DCC Warden THOMAS CORROLL and 3) Support Services Manager JOE HUDSON, alerting all of them of his situation in depth; and to the fact that the medical starff was inadequate and deficient in treating his condition. JOE HUDSON was the only one out of the three to respond at all. EXHIBIT H

29. On May 17th, 2004, Plaintiff MILLER submitted an 8th sick-call slip which alerted medical staff to the fact that medication supposedly ordered on 5-4-04, plaintiff hadn't been issued or started yet. SEE EXIBIT I

30. On may 24th, 2004, Plaintiff Miller submitted a 9th sick-call slip. It mentioned once again Plaintiff's pain and lack of sleep. Also medicine (Tylenol) plaintiff was taking for pain prior to 5-4-04, when plaintiff was seen by defendant DR. ALIE was discontinued by defendant DR. ALIE on that date. SEE EXIBIT J

31. On June 1st, 2004, Plaintiff MILLER submitted a sick-call slip mentionion pain and lack of sleep once again. SEE EXIBIT K

32. EXIBITS L and M are follow – up notes DCC Commissioner and DCC Warden ( defendants STANLEY TAYLOR AND THOMAS CARROLL) alerting them that plaintiff haven't received any response from them and reminding them that the medical staff have not been providing adequate care.

33. On July 6th, 2004, Plaintiff MILLER submitted another sick-call slip requesting attention. It mentioned pain plaintiff has been experiencing plus continuous swelling. See EXIBIT N

34. On July 6th, 2004, also, Plaintiff MILLER was called to medical to meet with RN TERRY HASTINGS to mediate a grievance submitted 5-4-04. RN HASTINGS informed plaintiff that he had now been approved for orthopedic shoes. SEE EXIBIT G 3

35. On Aug 8th, 2004, Plaintiff submitted 15th sick-call slip requesting to see a foot specialist and complainting of sharp pains that he was beginning to experience. SEE EXIBIT O

36. On Aug 18th, 2004, Plaintiff was called to medical to attend a level 2 hearing headed by LINDA HUNTER (Director of First Correctional Medical services). The outcome of that meeting was that the board was supposed to recommend that Plaintiff see a foot specialist (Pediatrist) and that Plaintiff be recommendedFOR ORTHOPEDIC SHOES; EVEN THOUGHT Plaintiff was told more than a month before that he'd been approved for both.

37. On Sept 6th, 2004, Plaintiff MILLER submitted another grievance which was very abundant and specific in detail. It talked about pain; it requested to be seen by a specialist or to be sent to an outside consultant. It also talked about Plaintiff beginning to lose feeling in his feet and that he had not been able to sleep, exercise or walk properly for nine months. SEE EXIBIT P

38. On Sept 7th, 2004, Plaintiff MILLER wrote a very detailed letter to the DCC Warden- defendant THOMAS CARROLL, telling him the full summary of his situation and how it was being handled. There was no way possible to be any clearer about the problem. SEE EXIBIT Q

39. On Sept 9th, 2004, Plaintiff MILLER wrote a letter to the DCC Commissioner – defendant STANLEY TAYLOR which was just as detailed ( if not more ) as the letter to the Warden. SEE EXIBIT R

40. On Oct 11th, 2004, Plaintiff MILLER wrote a letter to the DCC deputy Warden Betty Burris to acquaint her with his situation since he knew that she had a reputation for responding SEE EXIBIT U

41. On information and belief, defendant DR. ALIE prepared a memo in January 2004, which stated that the medical staff was no longer to issue orthopedic shoes or sneakers to inmates under any circumstances.

42. Defendant RN IHOMA conveyed this to plaintiff and shew plaintiff the memo. She also knowingly neglected to properly treat or recommend proper treatment for his injury.

43. On information and belief the policy and practice of DCC upon bringing defendant DR. ALIE onboard as Director of the Medical Staff is/was to save money at all costs, even if it means denying inmates who require treatment ( costly or non-costly) adequate care and even if such actions are essential to the conduct of a lawsuit.

44. Defendants STANLEY TAYLOR (COMMISSIONER) and THOMAS CARROLL (WARDEN) either knew about defendant DR. ALIE's "money saving" policies and practices or they should have known in the proper exercise of their official duties. But after Plaintiff MILLER wrote three letters to both fully detailing his situation there is no question that both were/ are aware of such practices. And although both has the power and the legal duty to end these practices, both failed or refused to do so.

V.   LEGAL CLAIMS

45. Plaintiff have been deprived of his right to " reasonably adequate" medical care which is guaranteed under the Eighth Amendment to the United States Constitution. Courts have defined adequate medical care as "service at a level reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards" and at " a level of health services reasonably

designed to meet routine emergency medical, dental, psychological or psychiatric care ".

46. Defendants failure to provide medical care needed by plaintiff MILLER constitutes 1) cruel and unusual punishment: in violation of the Eight Amendment of the U.S. Constitution and 2) punishment without due process of law: in violation of the Fourteenth Amendment to the U.S. Constitution.

47. Defendants demonstrated " deliberate indifference " to serious medical needs of Plaintiff's; which has led to the " unnecessary and wanton infliction of pain " prescribed by the Eighth Amendment.

48. The defendants knew of and disregarded an excessive risk to Plaintiff's health and failed to act on a serious medical need even after Plaintiff continually complained of pain and requested to see a foot specialist. These complaints have continued for one full year ( until present ) without an examination of Plaintiff's feet or any real treatment which has led Plaintiff to believe that they are being purposely ignored.

49. Plaintiff have been incarcerated for seven years and have suffered no such pain, nor are there any history of such pain prior to Jan 2004, before Plaintiff's arches fell. Plaintiff could walk properly exercise and run. Plaintiff also slept normally prior to Jan 2004.

50. The Plaintiff have no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff have been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the declatory and injunctive relief which Plaintiff seeks.

WHEREFORE, Plaintiff respectfully pray that this court enter judgement

granting Plaintiff:

1. A declaratory judgment that the defendants acts, policies and practices described herein violate Plaintiff's rights under the United States Constitution.
2. A preliminary and permanent injunction which:

A. Requires defendants THOMAS CARROLL (Warden) and DR. ALIE (MEDICAL DIRECTOR) to rescind the policy directive concerning denial of treatment and to have regulations which prohibits such practices in the future, especially when such treatment is necessary and can prevent unnecessary risk to prisoners health and safety.

B. Prohibits defendants, their agents, employees, successsors in interest and all other persons in active concert or participation with them; from harassing, threatening, punishing or retaliating in any way against the plaintiff because he filed this action or from transferring Plaintiff to any other institution without his express consent, during the pendency of this action.

C. Requires defendants to treat Plaintiff to the best of their ability and to have Plaintiff seen by a foot specialist ( podiatrist ) to determine what course of action needs to be followed henceforth.

3. Compensatory damages in the amount of $20,000. to Plaintiff MILLER from all defendants and each of them.

4. Punitive damages of $20,000. from defendant DR. Alie and defendant RN Ihoma.

5. Trial by jury on all issues triable by jury.

6. Plaintiff's cost of this suit.

7. Such other and further relief as this court may deem just, proper and equitable

                                    Respectfully Submitted,
                                     JULIAN A. MILLER
                                    393626

Dated  3-3-05

80033710.doc