~~Julian A. Miller~~[1]

~~393626~~[2]

~~Delaware Correctional Center~~[3]

~~1181 Paddock Road~~[4]

~~Smyrna, Delaware 19977~~[5]

~~In propria personam~~[6] IN THE UNITED STATES DISTRICT COURT
[7]

FOR THE DISTRICT OF DELAWARE

[8]

| | |
|---|---|
| ~~JULIAN A. MILLER,~~[9] <u>Julian A. Miller</u>[10] | |
| Plaintiff, | |
| v. | |
| ~~STANLEY TAYLOR, individually and in his official capacity as Commissioner of the Delaware Department of Correction; THOMAS CARROLL, individually and in his official capacity as Warden of~~[11] ~~the Delaware Correctional Center at~~[12] ~~Smyrna; DR. ALIE~~[13] <u>Stanley Taylor, individually; Thomas Carroll, individually; Dr. Sitta B. Gombeh-Alie</u>[14], individually and in her official capacity as ~~Medical Director at DCC Smyrna;~~ ~~RN IHOMA~~[15] <u>medical director at</u>[16] <u>the Delaware Correctional Center at</u>[17] Smyrna; <u>Registered Nurse Ihoma</u>[18], individually and in her ~~official capacity as Registered Nurse at DCC Smyrna;~~[19] <u>capacity as a registered nurse at the Delaware Correctional Center at Smyrna; and First Correctional Medical,</u>[20] | ~~COMPLAINT~~[23]<br><br>Civil Action No. 04~~cv~~[24]~~-~~[25]1367 <u>(KAJ)</u>[26]<br><br>~~(CIVIL RIGHTS)~~[27]<u>Demand For Jury Trial</u>[28] |
| Defendants,[21] .[22] | |

<u>SECOND</u>[29] **AMENDED COMPLAINT**

~~I.        JURISDICTION~~[30]

~~1.   This is a civil action authorized by 42 U.S.C. sec. 1983 to redress the deprivation, under color of State Law, of rights secured by the constitution of the United States. The court has jurisdiction under 28 U.S.C. sec. 2201 and 2202.~~[31]

## ~~II.    PLAINTIFF~~[32]

~~2.    Plaintiff JULIAN MILLER, is~~[33]Plaintiff Julian A. Miller, by and through his undersigned counsel, hereby files this Second Amended Complaint against Stanley Taylor, Thomas Carroll, Dr. Sitta B. Gombeh-Alie, Registered Nurse Ihoma, and First Correctional Medical requesting damages and injunctive relief.[34]

## NATURE OF THE ACTION[35]

1.    Plaintiff Julian A. Miller ("Plaintiff Miller") is presently,[36] and was at all times mentioned herein, ~~prisoner of~~[37]incarcerated by[38] the ~~state of~~[39] Delaware~~, in the custody of the~~[40] Department of Corrections ~~of the State of Delaware~~[41].  He is currently confined in the Delaware Correctional Center, Smyrna, Delaware,[42]

## ~~III.    DEFENDANTS~~[43]

2.    Plaintiff Miller has suffered and continues to suffer from pain in his feet.[44]

3.    Defendants have violated Plaintiff Miller's rights guaranteed by the United States Constitution in failing to treat his medical condition.[45]

4.    The acts of defendants Dr. Sitta B. Gombeh-Alie, Registered Nurse Ihoma, and First Correctional Medical constitute medical malpractice.[46]

5.    By virtue of defendants' wrongful actions, Mr. Miller is entitled to damages and injunctive relief.[47]

## THE PARTIES[48]

6.    Plaintiff Miller is, and was at all times relevant herein, incarcerated at the [49]Delaware Correctional Center[50] (the "DCC"), 118 Paddock Road, Smyrna, Delaware 19977.[51]

~~3.    Defendant STANLEY TAYLOR is the Commissioner~~[52]7.   Defendant Stanley Taylor ("Defendant Taylor"), at all times relevant herein, was employed as the

commissioner[53] of the Delaware Department of Corrections. ~~He is legally responsible for the overall operation of the department of each institution under it's jurisdiction including DCC Smyrna~~[54] (the "DOC").  Defendant Taylor's duties included overseeing the operations of the DOC and the DCC[55].

~~4.  Defendant THOMAS CARROLL is the Warden of DCC Smyrna.  He is legally responsible for the operation of DCC Smyrna and the welfare of all the inmates of that prison~~[56]

    8.    Defendant Thomas Carroll ("Defendant Carroll"), at all times relevant herein, was employed as the warden of DCC.  Defendant Carroll's duties included overseeing the operations of the DCC.[57]

    ~~5.    Defendant DR. ALIE is the Director~~[58]9.    Defendant Dr. Sitta B. Gombeh-Alie ("Defendant Gombeh-Alie"), at all times relevant herein, was employed as the director[59] of the medical staff at the [60]DCC ~~Smyrna.  She is legally responsible for the overall~~[61].  Defendant Gombeh-Alie's duties included overseeing the[62] operations of the medical department and ~~for the health of all the inmates of that prison department and for the health of all the inmates of that prison~~[63]providing health care to all inmates at the DCC.[64]

    ~~6.    Defendant RN IHOMA is~~[65]10.    Defendant Registered Nurse Ihoma ("Defendant Ihoma"), at all times relevant herein, was employed as[66] a registered nurse ~~of~~[67]at [68]the ~~medical staff at~~[69]DCC ~~Smyrna.  She is legally responsible for the health of those inmates who comes~~[70].  Defendant Ihoma's duties included providing health care to inmates[71] under her ~~direct~~[72] supervision at the DCC.  Defendant Ihoma's full name is not currently known and will be ascertained during discovery.[73]

    11.    Defendant First Correctional Medical ("Defendant FCM"), at all times relevant herein, was the primary health-care provider for the DCC and was responsible for the overall health care and treatment for all inmates.[74]

3

12.    The defendants may be categorized into the following groups: (1) the "State Defendants" being comprised of Stanley Taylor and Thomas Carroll; and (2) the "Health Care Defendants" being comprised of Dr. Sitta B. Gombeh-Alie, Registered Nurse Ihoma, and First Correctional Medical.[75]

7.    Each defendant is sued individually and in his or her official capacity at all times mentioned in this complaint.  Each defendant acted under the color of Delaware Law[76] 13.    All individual defendants and Defendant FCM acted under the color of state law and at all times mentioned herein were agents and employees of the State of Delaware.[77]

14.    The State Defendants are sued in their individual capacities.[78]


JURISDICTION AND VENUE[79]

15.    This action seeks injunctive relief and monetary damages for violations of the rights, privileges, and immunities secured under the United States Constitution, 42 U.S.C. § 1983 and an ancillary state law claim of medical negligence.[80]

16.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.  [81]

17.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) since the acts and transactions complained of herein occurred within this district.  [82]

IV.    [83]FACTS[84]

8.  [85]18.  [86]On or about January 15, 2004, Plaintiff MILLER[87]Miller[88]'s feet began to ache in and around the arch area of his feet[89].  Prior to this, [90]Plaintiff MILLER began soaking his feet at night and massaging them to sooth the ache.  This worked for a week or two.[91]Miller had no pain in or medical problems with his feet.[92]

19.    To alleviate the pain, Plaintiff Miller soaked his feet at night and massaged them.  This alleviated the pain for one to two weeks.[93]

20.    After approximately two weeks, Plaintiff Miller realized he could not himself alleviate the pain, and he submitted a sick-call slip on January 27, 2004.[94]

~~9.    When Plaintiff MILLER realized that the pain was getting worse he submitted a sick~~[95]21.The January 27, 2004 sick-[96]call slip ~~to be seen at medical.  The first slip was admitted Jan. 27th, 2004.  It~~[97] has not been returned ~~as of 2-8-2005.  It should be~~[98]to Plaintiff Miller.  On information and belief, the slip is[99] a part of ~~Plaintiff~~[100]plaintiff[101]'s medical files at the DCC[102].

22.    When a sick call slip is submitted, the inmate's name is placed on a list to appear at the hospital[103] to see a nurse or doctor.[104]

~~10.~~[105]23.[106]On ~~Feb. 4th,~~[107]February 4,[108] 2004, Plaintiff ~~MILLER~~[109]Miller[110] was seen at the hospital[111] by Defendant ~~RN IHOMA who upon~~[112]Ihoma.  Upon[113] hearing Plaintiff's[114] symptoms and ~~nature of plaintiff's complaint, immediately stated that "we~~[115]condition, Defendant Ihoma responded, "We[116] do not issue sneakers or corrective shoes anymore~~".  All actions henceforth mentioned and documented herein is consistent with the implementation and follow-through of this practive of policy.~~[117]."  Defendant Ihoma provided Plaintiff Miller with pain medication and stated that she ordered arch supports.  Defendant Ihoma took no further actions to examine or treat Plaintiff Miller's condition.[118]

24.    On information and belief, the actions taken by Defendant Ihoma were part of a cost-saving policy initiated by Defendant FCM.[119]

~~11.~~[120]25.[121]On ~~Feb. 16th,~~[122]February 16,[123] 2004, Plaintiff ~~MILLER~~[124]Miller[125] submitted  a second sick- call slip ~~explaining~~[126]detailing[127] his inability to sleep or walk properly due to the pain ~~and suffering that he was experiencing as a result of this condition not being treated~~[128]in his feet[129].

~~12.     The~~[130]26.     In response to the second[131] sick-~~call procedure is as follows:  A sick- call slip is submitted and this inmate is put on a list to appear at the infirmary~~[132] ~~to see a nurse or doctor.~~[133]  ~~In this instance~~[134]call slip[135], Plaintiff Miller [136]was not ~~put~~[137]placed[138] on a list and was[139] therefore ~~couldn't appear~~[140]unable to obtain medical care[141] at the hospital.  Instead, ~~defendant RN IHOMA~~[142]Defendant Ihoma[143] mailed ~~plaintiff a reply~~[144]Plaintiff Miller a form[145] which stated that[146]~~he'd already had been seen on this issue; even though nothing was done the first time.  SEE EXHIBIT A~~[147]been seen on this matter.  A copy of Defendant Ihoma's response to Plaintiff Miller's second sick-call slip is attached as Exhibit A to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[148]

~~13. A copy of this and all sick – call slips, letters, requests and grievances are included in this complaint as EXHIBITS A-Z and used as confirmation of statements herein made.~~[149]

~~14.~~[150]27.[151]On ~~Feb. 22nd,~~[152]February 22,[153] 2004, Plaintiff ~~MILLER~~[154]Miller[155] submitted a ~~3rd~~[156]third[157] sick—[158]-[159]call slip ~~alerting~~[160]notifying[161] the medical staff ~~to the fact that Tylenol prescribed~~[162]that the pain medication provided to him[163] by Defendant ~~RN IHOMA~~[164]Ihoma[165] had ~~absolutely~~[166]no ~~affect~~[167]effect[168] on his pain.  ~~It also made reference to plaintiff MILLER not getting proper~~[169]Plaintiff Miller also indicated that he was unable to[170] sleep ~~at~~[171]through the[172] night because of the pain.  ~~SEE EXHIBIT B~~[173] in his feet.  A copy of Plaintiff Miller's third sick-call slip is attached as Exhibit B to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[174]

28.     Plaintiff Miller received no response to his February 22, 2004 sick-call slip.[175]

~~15.~~[176]~~29.~~[177]On March ~~4th;~~[178]4,[179] 2004, Plaintiff ~~MILLER~~[180]Miller[181] submitted a medical [182]grievance ~~complaining about his~~[183]regarding his deteriorating medical[184] condition ~~worsening.  It also mentioned that~~[185]_.  In his grievance, Plaintiff Miller noted that he had not received the_[186] arch supports supposedly ordered ~~on Feb. 4th, had not been received by plaintiff MILLER as of yet.  SEE EXHIBIT C1 and C2~~[187]following his February 4, 2004 hospital visit.  A copy of Plaintiff Miller's March 4, 2004 grievance is attached as Exhibit C to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[188]

~~16.~~[189]30. [190]On March ~~9th;~~[191]9,[192] 2004, Plaintiff ~~MILLER~~[193]Miller[194] submitted a ~~4th;~~[195]fourth[196] sick—[197]=[198]call slip ~~complaining about not being able to get proper~~[199]reiterating that he was unable to[200] sleep through the night [201]because of the [202]pain.  ~~IT also mentions that Plaintiff hadn't~~[203] in his feet.  Additionally, he noted that he still had not[204] received the [205]arch supports supposedly [206]ordered ~~on 2 – 4 – 04.  SEE EXHIBIT D~~[207]following his February 4, 2004 hospital visit.  A copy of the March 9, 2004 sick-call slip is attached as Exhibit D to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[208]

~~17.    On March 13th, 2004 Plaintiff Miller wrote a letter to defendant and Medical Director DR. ALIE to acquaint her with his situation.  SEE EXHIBIT E  The details of that letter included:  the pain being experienced; the progression of the injury; the fact that plaintiff submitted sick-call slips, a grievance, and had been seen by defendant RN IHOMA, who had supposedly scheduled plaintiff to see her (defendant DR. ALIE) as seen in EXIBIT C2; and that plaintiff felt to be getting "inadequate treatment". as documented in EXIBIT E~~[209]31.    On March 13, 2004, Plaintiff Miller wrote a

detailed letter to Defendant Gombeh-Alie to notify her of his medical condition and of the inadequate medical care he was receiving.  In that letter, he detailed the pain he was experiencing; the progression of his medical condition; his attempts to receive medical care through the filing of sick-call slips and grievances; the discontinuation of pain medication; and his efforts and desire to be examined.  A copy of the March 13, 2004 letter is attached as Exhibit E to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[210]

32.    On March 25, 2004, a full three weeks after submitting his grievance, Plaintiff Miller received a notice of informal resolution.  In the informal resolution, Defendant Gombeh-Alie noted that Plaintiff Miller does not qualify for medically purchased shoes.  A copy of the March 25, 2004 notice of informal resolution is attached as Exhibit D to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[211]

~~18.~~[212]33.[213]Plaintiff ~~MILLER~~[214]Miller[215] received a reply to ~~this~~[216]his March 13, 2004[217] letter from Defendant Gombeh-Alie nearly[218] two months later ~~statin~~[219], on May 3, 2004, and was informed[220] that he would be ~~seen (or~~[221]scheduled to be ~~seen)~~[222]evaluated[223] by ~~defendant DR. ALIE soon as recorded on the back of EXIBIT E~~[224]her.[225]

~~19.~~[226]34.[227]On March ~~21ˢᵗ,~~[228]21,[229] 2004, Plaintiff Miller submitted a fifth sick-call slip ~~which detailed~~[230]that described[231] the intense[232] pain he was ~~having~~[233]suffering[234] and the ~~fact that the swelling had~~[235] increased ~~and now included Plaintiff's~~[236]swelling in his[237] feet and ankles. ~~This~~[238]

35.    Plaintiff Miller received no response to his March 21, 2004[239] sick-call slip ~~was~~[240],[241] .

36.    The March 21, 2004 sick-call slip has[242] not been[243] returned to ~~plaintiff and should be included in~~[244] Plaintiff Miller.  On information and belief, the slip is a part of[245] plaintiff's medical ~~records~~[246] files at the DCC[247].

~~20.    On March 25th, 2004, plaintiff MILLER was called before RN TERRY HASTINGS who was sent to mediate a grievance filed on March 4th, 2004.  Two days prior to this meeting Plaintiff was given some hard plastic arch supports that has supposedly been ordered in January, but by now Plaintiff's arches had completely fallen and those arch supports actually added to the pain plaintiff was experiencing~~[248] 37. On March 23, 2004, seven weeks after they were supposedly ordered following his February 4, 2004 hospital visit, Plaintiff Miller finally received hard, plastic arch supports.  The delivery date of the arch supports is indicated on the March 25, 2004 notice of informal resolution.  *See* Exhibit C to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[249]

38.    During the nearly two month lapse between Plaintiff Miller's February hospital visit and receipt of the arch supports, his untreated medical condition worsened.  When finally used, the arch supports actually caused more pain[250].  Plaintiff ~~was told to try arch~~[251] Miller was instructed to use the[252] supports for a month or two,[253] and if ~~they didn't help~~[254] his condition did not improve[255], to file another grievance.  ~~SEE EXIBIT C2~~[256]

~~21. On April 7th, 2004, Plaintiff MILLER~~[257]

39.    No explanation for the delay in receiving the arch supports was given.  On information and belief, the delay was due to Defendant FCM's cost-saving policy, which

Defendant FCM knew denied medical care to DCC inmates, causing or exacerbating inmates' injuries.[258]

40.     On March 25, 2004, Plaintiff Miller appeared before registered nurse Terry Hastings, who was appointed to mediate the grievance filed by Plaintiff Miller on March 4, 2004.  Registered nurse Hastings noted that Plaintiff Miller should have a follow up visit with Defendant Gombeh-Alie on a March 25, 2004 notice of informal resolution.  See Exhibit D to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[259]

41.     On April 7, 2004, Plaintiff Miller[260] submitted a 6[th][261] sixth[262] sick-call slip which detailed the pain and swelling of his feet, ankles and legs up to his calves.  It also mentioned that Plaintiff had yet to receive a response to the sick-call slip that was submitted on March 21st.  It was not returned to Plaintiff and should be[263], which again described the pain he was suffering and the swelling in his feet, ankles, and calves.[264]

42.     The April 7, 2004 sick-call slip has not been returned to the Plaintiff.  On information and belief, the sick-call slip is[265] a part of plaintiff's medical records.[266]

22.  On April 19th, 2004, Plaintiff MILLER submitted a second grievance.  The details of that grievance included:  Plaintiff's conren that the situation going untreated may have led to something else and Plaintiff MILLER requested to be examined to confirm or deny such concerns.  It also mentioned pain, not being able to sleep properly and the fact that plaintiff was told he would be scheduled to see defendant and Medical Director DR. ALIE.  SEE EXHIBIT F1 and F2[267]

23.  Plaintiff will note at this time that it has been 3 months since the first or initial complaint and plaintiff haven't yet been visually examined, even amidst the many complaints already filed.[268]

24. The grievance procedure (according to prison guidelines) should go as follows: A grievance is submitted and within 10 working days inmate should go before an intermediate who attempt to resolve the grievance before it goes to the next level. If intermediate cannot resolve grievance, their job or duty is to referrer it to a Level 2 hearing which go before a board or committee who either confirm or deny complaining party's request.[269]

25. On May 24th, 2004, Plaintiff MILLER was called to medical to see defendant DR. ALIE- Medical Director; two months after plaintiff wrote her a letter describing his situation. Plaintiff MILLER began to redirect defendant DR. ALIE's attention to his condition because; 1) he knew that she dealt with many patients and 2) it had been 2 months since his letter had been wrote to her. About 2 sentences into plaintiff's explanation, defendant DR. ALIE interrupted abruptly and said " we are not here to talk about your feet". Plaintiff then showed defendant DR. ALIE the leter that he has written to her (EXIBIT E) and the grievance that said he was scheduled to see her (EXIBIT C2). DR. ALIE then (without any examination) told plaintiff MILLER that " he didn't qualify for sneakers or orthopedic shoes". Plaintiff MILLER asked DR. ALIE to put that in writing and she said "sure". SEE EXIBIT C2[270]

26. On May 7th, 2004, Plaintiff was called to medical to see RN EDITH RIVERA, who was the grievance mediator that week. At this time RN EDITH RIVERA made plaintiff aware that DR. ALIE had diagnosed his condition as postherpetic neuralgia and had issued and ordered a medication called gaba pentin. All this without ever examining plaintiff's feet or discussing it at all with plaintiff. This diagnosis was written in plaintiff's files after plaintiff left defendant DR. ALIE's office on May 4th, 2004. SEE EXIBITS C2 and F2[271] files at the DCC.[272]

43.     On April 19, 2004, Plaintiff Miller submitted a second grievance. In this grievance, Plaintiff Miller described his untreated condition, which included the pain he was feeling, the swelling in his feet and legs, and his inability to sleep because of the

11

pain.  Additionally, Plaintiff Miller expressed his desire to be examined by Defendant Gombeh-Alie, whom he was told during his March 24, 2004 grievance proceeding would examine him.  A copy of the April 19, 2004 grievance and the notice of informal resolution to the grievance are attached as Exhibit F to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[273]

44.     On May 4, 2004, Plaintiff Miller finally saw Defendant Gombeh-Alie.  Plaintiff Miller attempted to describe his medical condition to Defendant Gombeh-Alie and summarize his March 13, 2004 letter to her, but was interrupted by Defendant Gombeh-Alie, who informed him that they were not there to discuss his feet.[274]

45.     Without ever examining Plaintiff Miller's feet, Defendant Gombeh-Alie informed him that he didn't qualify for sneakers or orthopedic shoes.  Upon Plaintiff Miller's request, Defendant Gombeh-Alie wrote that Plaintiff Miller "does not qualify for medically purchased shoes" on the Informal Resolution page from Plaintiff Miller's March 4, 2004 grievance submission.  See Exhibit C to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.  This concluded Plaintiff Miller's "examination."[275]

46.     On information and belief, Defendant Gombeh-Alie's decision that Plaintiff Miller did not qualify for medically purchased shoes is part of FCM's cost-saving policy, which Defendant FCM knew denied medical care to DCC inmates, causing or exacerbating inmates' injuries.[276]

47.     Following Plaintiff Miller's May 4, 2004 "examination," Defendant Gombeh-Alie discontinued Plaintiff Miller's pain medication.  A copy of a May 24, 2004 sick-call slip, indicating the discontinuation of my pain medication, is attached as Exhibit

G to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[277]

48.    On May 7, 2004, Plaintiff Miller appeared before registered nurse Edith Rivera, who was appointed as grievance mediator for his April 14, 2004 grievance submission.  Plaintiff Miller was told for the first time that Defendant Gombeh-Alie had diagnosed his condition as post-therpetic neuralgia and had prescribed the drug Gabapentin.  See Exhibit F to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[278]

~~27.~~ [279]49. [280]On May ~~14th, 2004~~[281]14, 2004,[282] Plaintiff ~~MILLER~~[283]Miller[284] submitted a third grievance ~~which mentioned~~[285]describing his increasing foot[286] problems ~~walking and plaintiff~~[287]and his inability to walk.  Additionally, Plaintiff Miller[288] requested to ~~go to an outside hospital.  Exibits G1,G2, and G3~~[289]be seen by an outside physician.  A copy of the May 14, 2004 grievance and the notice of informal resolution to the grievance are attached as Exhibit H to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[290]

~~28.  On May 14th, 2004, also; Plaintiff MILLER wrote a letter to the following authorities: 1) DCC Commissioner STANLEY TAYLOR; 2) DCC Warden THOMAS CORROLL and 3) Support Services Manager JOE HUDSON, alerting all of them of his situation in depth; and to the fact that the  medical starff was inadequate and deficient in treating his condition.  JOE HUDSON was the only one out of the three to respond at all.  EXHIBIT H~~[291]

29. On May 17th, 2004, Plaintiff MILLER submitted an 8th sick-call slip which alerted medical staff to the fact that medication supposedly ordered on 5-4-04, plaintiff hadn't been issued or started yet.  SEE EXIBIT I[292]

30. On may 24th, 2004, Plaintiff Miller submitted a 9th sick-call slip.  It mentioned once again Plaintiff's pain and lack of sleep.  Also medicine (Tylenol) plaintiff was taking for pain prior to 5-4-04, when plaintiff was seen by defendant DR. ALIE was discontinued by defendant DR. ALIE on that date.  SEE EXIBIT J[293]

31. On June 1st, 2004, Plaintiff MILLER submitted a sick-call slip mentionion pain and lack of sleep once again.  SEE EXIBIT K[294]

32. EXIBITS L and M are follow – up notes DCC Commissioner and DCC Warden ( defendants STANLEY TAYLOR AND THOMAS CARROLL) alerting them that plaintiff haven't received any response from them and reminding them that the medical staff have not been providing adequate care.[295]

33. On July 6th, 2004, Plaintiff MILLER submitted another sick-call slip requesting attention.  It mentioned pain plaintiff has been experiencing plus continuous swelling. See EXIBIT N[296]

34. On July 6th,2004, also, Plaintiff MILLER was called to medical to meet with RN TERRY HASTINGS to mediate a grievance submitted 5-4-04.  RN HASTINGS informed plaintiff that he had now been approved for orthopedic shoes.  SEE EXIBIT G-3[297]

35. On Aug 8th, 2004, Plaintiff submitted 15th sick-call slip requesting to see a foot specialist and complainting of sharp pains that he was beginning to experience.  SEE EXIBIT O[298]

36. On Aug 18th, 2004, Plaintiff was called to medical to attend a level 2 hearing headed by LINDA HUNTER (Director of First Correctional Medical services).  The outcome of that meeting was that the board was supposed to recommend that Plaintiff see a foot specialist (Pediatrist) and that Plaintiff be recommendedFOR ORTHOPEDIC

SHOES; EVEN THOUGHT Plaintiff was told more than a month before that he'd been approved for both.[299]

37. On Sept 6th, 2004, Plaintiff MILLER submitted another grievance which was very abundant and specific in detail. It talked about pain; it[300] requested to be seen by a [301] specialist or to be sent to an outside consultant. It also talked about Plaintiff beginning to lose feeling[302] in his feet and that he had not [303] been able to sleep, exercise or walk properly for nine months. SEE EXHIBIT P[304]

38. On Sept 7th, 2004, Plaintiff MILLER wrote a very detailed letter to the DCC Warden defendant THOMAS CARROLL, telling him the full summary of his situation and how it was being handled. There was no way possible to be any clearer about the problem. SEE EXHIBIT Q[305]

39. On Sept 9th, 2004, Plaintiff MILLER wrote a letter to the DCC Commissioner – defendant STANLEY TAYLOR which was just as detailed ( if not more ) as the letter to the Warden. SEE EXHIBIT R[306]

40. On Oct 11th, 2004, Plaintiff MILLER wrote a letter to the DCC deputy Warden Betty Burris to acquaint her with his situation since he knew that she had a reputation for responding SEE EXIBIT U[307]

50.    On May 14, 2004, Plaintiff Miller wrote to Defendant Carroll informing him in detail of his medical condition, his repeated attempts to receive medical care, and the lack of health care being provided to him by the DCC medical staff.[308]

51.    Plaintiff Miller received no response from Defendant Carroll.[309]

52.    Plaintiff Miller received no indication that this correspondence was not delivered to Defendant Carroll.[310]

53.    On information and belief, Defendant Carroll received this correspondence.[311]

15

54.     On May 14, 2004, Plaintiff Miller wrote to Defendant Taylor informing him in detail of his medical condition, his repeated attempts to receive medical care, and the lack of health care being provided to him by the DCC medical staff.[312]

55.     Plaintiff Miller received no response from Defendant Taylor.[313]

56.     Plaintiff Miller received no indication that this correspondence was not delivered to defendant Taylor.[314]

57.     On information and belief, Defendant Taylor received this correspondence.[315]

58.     On May 17, 2004, Plaintiff Miller submitted an eighth sick-call slip indicating that he was still experiencing pain and swelling[316] in his feet and that he had not [317]yet received the medication supposedly prescribed for him following Defendant Gombeh-Alie's May 4 "examination."  A copy of the May 17, 2004 sick-call slip is attached as Exhibit I to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[318]

59.     On May 24, 2004, Plaintiff Miller submitted a ninth sick-call slip indicating that he was experiencing pain and swelling in his feet and legs, that his pain medication was discontinued as of May 4, 2004, and that because of the pain, he was unable to sleep through the night.  *See* Exhibit G to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[319]

60.     On June 1, 2004, Plaintiff Miller submitted an eleventh sick-call slip indicating that because of the pain in his feet, he was unable to sleep through the night.  A copy of the June 1, 2004 sick-call slip is attached as Exhibit J to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss

Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[320]

61.     Having received no response to his May 14, 2004 letter to Defendant Carroll, Plaintiff Miller wrote a follow-up letter on June 14, 2004 to again notify him of the lack of medical care he was receiving for his feet and to ask him to take action to help resolve this situation.  A copy of the June 14, 2004 letter to Defendant Carroll is attached as Exhibit K to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[321]

62.     Having received no response to his May 14, 2004 letter to Defendant Taylor, Plaintiff Miller wrote a follow-up letter on June 14, 2004 to again notify him of lack of medical care he was receiving for his feet and to ask him to take action to help resolve this situation.  A copy of the June 14, 2004 letter to Defendant Taylor is attached as Exhibit L to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[322]

63.     On July 6, 2004, Plaintiff Miller submitted a fourteenth sick-call slip indicating that he was experiencing swelling and pain in his feet.  A copy of the July 6, 2004 sick-call slip is attached as Exhibit M to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[323]

64.     On July 6, 2004, Plaintiff Miller appeared before registered nurse Terry Hastings, who was the mediator for the May 4, 2004 grievance.  Registered nurse Hastings informed Plaintiff Miller that he had been approved for orthopedic shoes.  See

Exhibit H to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants'
Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of
Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[324]

65.     On August 8, 2004, Plaintiff Miller submitted a fifteenth sick-call slip
indicating that he was experiencing pain in his feet and requesting to see a foot specialist.
A copy of the August 8, 2004 sick-call slip is attached as Exhibit N to the Declaration Of
Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss
Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in
Support of Julian Miller's Motion to Amend the Complaint.[325]

66.     On August 18, 2004, Plaintiff Miller attended a Level II hearing led by
director of First Correctional Medical Services Linda Hunter.  The board's
recommendation following the hearing was that Plaintiff Miller was to see a foot
specialist and receive orthopedic shoes.[326]

67.     On September 6, 2004, Plaintiff Miller submitted a medical grievance
describing the pain he was suffering in his feet, his repeated request to see a foot
specialist, the loss of feeling he was experiencing in his toes, and his inability to sleep,
exercise, or walk properly for nine months, since January, 2004, because of his condition.
A copy of the September 6, 2004 medical grievance is attached as Exhibit O to the
Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to
Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure
and in Support of Julian Miller's Motion to Amend the Complaint.[327]

68.     On September 7, 2004, Plaintiff Miller wrote to Defendant Carroll for the
third time regarding his medical condition and the lack of health care being provided to
him.  In particular, Plaintiff Miller specifically provided the following information: his
foot problems began in January, 2004; over the past nine months, he's filed numerous
sick-call slips and grievances regarding this condition but he has been denied adequate
medical care; nine months after submitting his initial sick-call slip, and despite repeated

requests, his feet had not even been visually examined; he has persistent pain and swelling in his feet; he has begun to lose feeling in his toes; without any examination, Defendant Gombeh-Alie determined he did not qualify for medically purchased shoes; he has[328] requested to be seen by a[329] foot specialist on at least three occasions; Defendant Ihoma informed him that because of a money-saving policy, the DCC no longer issues sneakers or corrective shoes; and he is unable to exercise, sleep, or walk properly because of his condition.  A copy of the September 7, 2004 letter to Defendant Carroll is attached as Exhibit P to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[330]

69.    On information and belief, after receiving three letters from Plaintiff Miller, Defendant Carroll knew of his medical condition, the lack of treatment by Defendants Gombeh-Alie and Ihoma, and the cost-saving policy initiated by Defendant FCM.[331]

70.    On September 9, 2004, Plaintiff Miller wrote to Defendant Taylor for the third time regarding his medical condition and the lack of health care being provided to him.  In particular, Plaintiff Miller specifically provided the following information: his foot problems began in January, 2004; over the past nine months, he's filed numerous sick-call slips and grievances regarding this condition but he has been denied adequate medical care; nine months after submitting his initial sick-call slip, and despite repeated requests, his feet had not even been visually examined; he has persistent pain and swelling in his feet; he has begun to lose feeling in his toes; without any examination, Defendant Gombeh-Alie determined he did not qualify for medically purchased shoes; he has requested to be seen by a foot specialist on at least three occasions; Defendant Ihoma informed him that because of a money-saving policy, the DCC no longer issues sneakers or corrective shoes; Defendant Ihoma directed him to a memorandum signed by

Defendant Gombeh-Alie regarding the DCC's money saving policy regarding sneakers and corrective shoes; he is unable to exercise, sleep, or walk properly because of his condition; his inability to ambulate has created a security problem at the DCC; Lieutenants Dixon, Satterfield, and Sekoy of the DCC have all inquired about his condition and have remarked about his inability to walk from his housing unit to the mess hall; Lieutenant Ryder of the DCC escorted him to the medical unit on an emergency basis as a result of Plaintiff Miller creating a security risk and inquired about the lack of medical treatment he has received.  A copy of the September 7, 2004 letter to Commissioner Taylor is attached as Exhibit Q to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[332]

71.    On information and belief, after receiving three letters from Plaintiff Miller, Defendant Taylor knew of his medical condition, the lack of treatment by Defendants Gombeh-Alie and Ihoma, and the cost-saving policy initiated by Defendant FCM.[333]

72.    On September 14, 2004, registered nurse Terry Hastings issued a notice of informal resolution for the grievance filed on September 6, 2004, and noted that Defendant Gombeh-Alie continued to deny treatment and referred the grievance to Level II.  A copy of the informal resolution to the September 6, 2004 medical grievance is attached as Exhibit R to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[334]

73.    On October 12, 2004, the grievance filed on September 6, 2004 was forwarded to the Medical Grievance Committee ("MGC").  A copy of the Grievance Information – IGC form indicating that the grievance was forwarded to the MGC is

attached as Exhibit S to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[335]

74.    On October 26, 2004, the Bureau Grievance Officer ("BGO") evaluated Plaintiff Miller's appeal of the grievance filed on September 6, 2004, and "recommend[ed] that FCM immediately authorize an outside consult with a foot specialist to address the Grievant's condition." A copy of the BGO's decision is attached as Exhibit T to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[336]

75.    On January 3, 2005, the Bureau Chief concurred with the recommendation of the BGO and wrote a letter to Plaintiff Miller informing him that his request had been upheld. A copy of the Bureau Chief's decision and letter to me are attached as Exhibit U to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[337]

76.    Despite the Bureau Chief's decision and the extensive administrative procedure followed, Plaintiff Miller was not examined by an outside foot specialist until nine months later, and did not receive orthopedic shoes until after that visit.[338]

41.[339] 77.[340] On information and belief, ~~defendant DR. ALIE prepared a memo in January 2004, which stated that~~[341] Defendant Gombeh-Alie drafted a memorandum in January, 2004 that stated, among other things, that because of FCM's money-saving policies,[342] the medical staff was no longer to issue orthopedic shoes or sneakers to inmates ~~under any circumstances~~[343].

21

**42.** Defendant RN IHOMA conveyed this to plaintiff and shew plaintiff the memo.  She also knowingly neglected to properly treat or recommend proper treatment for his injury.[344]

**43.** [345]

    <u>78.</u>   [346]On information and belief the policy and practice of DCC upon bringing defendant DR. ALIE onboard as Director of the Medical Staff is/was to save money at all costs, even if it means denying inmates who require treatment ( costly or non-costly) adequate care and even if such actions are essential to the conduct of a lawsuit.[347]

**44.** Defendants STANLEY TAYLOR (COMMISSIONER) and THOMAS CARROLL (WARDEN) either knew about defendant DR. ALIE's "money saving" policies and practices or they should have known in the proper exercise of their official duties.  But after Plaintiff MILLER wrote three letters to both fully detailing his situation there is no question that both were/ are aware of such practices.  And although both has the power and the legal duty to end these practices, both failed or refused to do so.[348]

**V.    LEGAL CLAIMS**[349]

**45.** Plaintiff have been deprived of his right to " reasonably adequate" medical care which is guaranteed under the Eighth Amendment to the United States Constitution.  Courts have defined adequate medical care as "service at a level reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards" and at " a level of health services reasonably designed to meet routine emergency medical, dental, psychological or psychiatric care ".[350] <u>, the hiring of Defendant Gombeh-Alie by Defendant FCM as director of the medical staff at DCC was to save money, at the expense of the health care provided to inmates.</u>[351]

79.     On information and belief, Defendant Gombeh-Alie is a pediatrician and is not medically qualified to be director of the DCC medical staff.[352]

80.     On October 18, 2004, Plaintiff Miller filed a complaint in the United States District Court for the District of Delaware as a result of the inadequate medical care he had received.[353]

81.     On March 7, 2005, Plaintiff Miller filed an amended complaint and served Defendants Gombeh-Alie, Ihoma, Taylor, and Carroll.[354]

82.     Defendants Gombeh-Alie, Taylor, and Carroll waived service of summons.  Copies of the waivers of service for Dr. Alie, Commissioner Taylor, and Warden Carroll are attached as Exhibit V to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[355]

83.     Defendant Ihoma did not waive service of summons.  However, she informed Plaintiff Miller that she received the complaint and no longer wanted to treat him since he filed a law suit naming her as a defendant.[356]

84.     Plaintiff Miller did not receive orthopedic shoes or see a foot specialist until October, 2005 and January, 2006, respectively, after Defendant FCM was replaced as the health care provider at the DCC  by Correctional Medical Services.[357]


## CAUSES OF ACTION[358]

## COUNT I – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED[359]
### (Against State Defendants)[360]


85.     Plaintiff Miller re-alleges paragraphs 1-84 of the Second Amended Complaint as is fully set forth herein.[361]

86.     The State of Delaware has an obligation to provide adequate medical care to individuals who are incarcerated in its prisons.[362]

87.     Defendants Taylor and Carroll, jointly and severally, acting in their individual capacities and under color of state law, were deliberately indifferent to Plaintiff Miller's rights, guaranteed by the Eighth Amendment of the United States Constitution, as shown by the following:[363]

(a)     They were sent multiple letters from Plaintiff Miller and had actual knowledge of specific instances in which the prison medical staff was mistreating or not treating Plaintiff Miller;[364]

(b)     They had actual knowledge of Plaintiff Miller's serious medical condition and that the lack of medical treatment exposed Plaintiff Miller to undue suffering;[365]

(c)     They had actual knowledge that Defendant FCM's cost-saving policy was implicated in Plaintiff Miller's inadequate medical care; and[366]

(d)     They failed to take any action to seek adequate medical care for Plaintiff Miller.[367]

88.     As a direct and proximate result of the of the State Defendants' failure to act on their knowledge of Plaintiff Miller's situation, Plaintiff Miller sustained injuries which have caused and will cause pain, suffering, disability, helplessness, inconvenience, mental and emotional distress, and a diminution of life's pleasures.[368]

89.     As a further direct and proximate result of the State Defendants' failure to act on their knowledge of Plaintiff Miller's situation, Plaintiff Miller will require specialized medical attention, at significant expense.[369]

90.     As a further direct and proximate result of the State Defendants' failure to act on their knowledge of Plaintiff Miller's situation, Plaintiff Miller has sustained an impairment of his capacity to earn a living upon his release from the DCC.[370]

**COUNT II – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED[371]
(Against Health Care Defendants)[372]**

91.     Plaintiff Miller re-alleges paragraphs 1-84 of the Second Amended Complaint as is fully set forth herein.[373]

92.     The State of Delaware has an obligation to provide adequate medical care to individuals who are incarcerated in its prisons.[374]

93.     Defendant FCM was the medical care provider for the DCC at all times pertinent hereto.[375]

94.     On information and belief, Defendant FCM initiated a cost-saving policy that resulted in a lack of medical care being provided to Plaintiff Miller.[376]

95.     Defendant Gombeh-Alie was the medical director at the DCC at all times pertinent hereto.[377]

96.     Defendant Ihoma was a registered nurse at the DCC at all times pertinent hereto.[378]

97.     Under color of state law, the Health Care Defendants' conduct evidenced a deliberate indifference to Plaintiff Miller's serious medical condition, and violated his rights guaranteed by the Eighth Amendment of the United States Constitution, in that they:[379]

(a)     failed to or provide medical care and attention to Plaintiff Miller when he was suffering from a serious medical condition;[380]

(b)     were negligent in providing care and attention to Plaintiff Miller, as its conduct fell below the accepted standard of care under the circumstances;[381]

(c)     failed or refused to properly diagnose Plaintiff Miller's serious medical condition and take the reasonable steps necessary to prevent further pain and suffering;[382]

(d)     failed or refused to schedule an examination with an outside foot specialist; and[383]

(e)     failed to take proper and reasonable remedial measures to combat Plaintiff
Miller's serious medical condition following "diagnosis" of his
condition.[384]

98.     The Health Care Defendants acted with deliberate indifference towards
Plaintiff Miller's serious medical condition in that they knew of Plaintiff Miller's
condition after numerous sick-call slip submissions, filed grievances, and requests for
medical care made personally by Plaintiff Miller and by DCC security staff; however, the
Health Care Defendants failed or refused to provide medical care or attention.[385]

99.     As a direct and proximate result of the of the Health Care Defendants'
failure to act on their knowledge of Plaintiff Miller's situation, Plaintiff Miller sustained
injuries which have caused and will cause pain, suffering, disability, helplessness,
inconvenience, mental and emotional distress, and a dimunition of life's pleasures.[386]

100.     As a further direct and proximate result of the Health Care Defendants'
failure to act on their knowledge of Plaintiff Miller's situation, Plaintiff Miller will
require specialized medical attention, at significant expense.[387]

101.     As a further direct and proximate result of the Health Care Defendants'
failure to act on their knowledge of Plaintiff Miller's situation, Plaintiff Miller has
sustained an impairment of his capacity to earn a living upon his release from the
DCC.[388]

### COUNT III – DUE PROCESS OF LAW VIOLATION[389]
### (Against All Defendants)[390]

102.     Plaintiff Miller re-alleges paragraphs 1-84 of the Second Amended
Complaint as is fully set forth herein.[391]

103.     The State of Delaware has an obligation to provide adequate medical care
to individuals who are incarcerated in its prisons.[392]

46.[393] 104.[394] Defendants failure to provide medical care needed by plaintiff MILLER
constitutes 1) cruel and unusual punishment: in violation of the Eight Amendment of the

26

~~U.S. Constitution and 2)~~[395] <u>constitutes</u>[396] punishment without due process of law~~:~~[397],[398] in violation of the Fourteenth Amendment ~~to~~[399]<u>of</u>[400] the ~~U.S.~~[401]<u>United States</u>[402] Constitution.

~~47. Defendants demonstrated " deliberate indifference " to serious medical needs of Plaintiff's; which has led to the " unnecessary and wanton infliction of pain " prescribed by the Eighth Amendment.~~[403]

~~48. The defendants knew of and disregarded an excessive risk to Plaintiff's health and failed to act on a serious medical need even after Plaintiff continually complained of pain and requested to see a foot specialist.  These complaints have continued for one full year ( until present ) without an examination of Plaintiff's feet or any real treatment which has led Plaintiff to believe that they are being purposely ignored.~~[404]

~~49. Plaintiff have been incarcerated for seven years and have suffered no such pain, nor are there any history of such pain prior to Jan 2004, before Plaintiff's arches fell. Plaintiff could walk properly exercise and run.  Plaintiff also slept normally prior to Jan 2004.~~[405]

~~50. The Plaintiff have no plain, adequate or complete remedy at law to redress the wrongs described herein.  Plaintiff have been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the declatory and injunctive relief which Plaintiff seeks.~~[406]

<u>105.    As a direct and proximate result of the acts and failures of the defendants, Plaintiff Miller sustained injuries which have caused and will cause pain, suffering, disability, helplessness, inconvenience, mental and emotional distress, and a dimunition of life's pleasures.</u>[407]

<u>106.    As a further direct and proximate result of the acts and failures of the defendants, Plaintiff Miller will require specialized medical attention, at significant expense.</u>[408]

<u>107.    As a further direct and proximate result of the acts and failures of the defendants, Plaintiff Miller has sustained an impairment of his capacity to earn a living upon his release from the DCC.</u>[409]

## COUNT IV – MEDICAL NEGLIGENCE[410]
## (Against Health Care Defendants)[411]

108.    Plaintiff Miller re-alleges paragraphs 1-84 of the Second Amended Complaint as is fully set forth herein.[412]

109.    At all relevant times herein, agents, servants, and employees of Defendant FCM were acting in the course and scope of their employment for Defendant FCM.[413]

110.    Defendant and Defendant Gombeh-Alie is a physician licensed to practice medicine in the State of Delaware.[414]

111.    At all relevant times herein, Defendant Gombeh-Alie was acting within the course and scope of her employment by Defendant FCM.[415]

112.    Defendant Ihoma is a registered nurse licensed in the State of Delaware.[416]

113.    At all relevant times herein, Defendant Ihoma was acting within the course and scope of her employment by Defendant FCM.[417]

114.    During the course of his incarceration at the DCC from January, 2004 until FCM's contract as health care provider for the DCC was terminated, Plaintiff Miller was under the medical care of the Health Care Defendants.[418]

115.    On January 27, 2004, Plaintiff Miller first notified the FCM medical staff of his foot problems.[419]

116.    Plaintiff Miller submitted more than a dozen sick-call slips and three grievances seeking treatment for his medical condition.[420]

117.    Defendants Gombeh-Alie and Ihoma, and Defendant FCM, acting through its agents, servants, and employees, failed to render medical services to Plaintiff Miller in conformity with acceptable standards of care, and committed malpractice within the meaning of 18 Del. C. § 6801, in that they:[421]

(a)    Failed to monitor Plaintiff Miller's condition once it was identified;[422]

(b)    Failed to examine and properly diagnose Plaintiff Miller's condition;[423]

(c)    Failed to consult with a foot specialist or podiatrist regarding Plaintiff Miller's condition;[424]

(d)    Failed to provide orthopedic shoes to Plaintiff Miller for more than a year after Terry Hastings mediated a grievance file by Plaintiff Miller and informed him that he had been approved for orthopedic shoes;[425]

(e)    Discontinued pain medication despite repeated submissions of sick-call slips and grievances by Plaintiff Miller complaining of pain in his feet; and [426]

(f)    Failed to provide Plaintiff Miller with Gabapentin for his "diagnosed" condition for more than one month after it was prescribed.[427]

118.    Pursuant to 18 Del. C. § 6853, Plaintiff Miller will submit an affidavit of merit from an expert witness, within 60 days of filing the Second Amended Complaint. Counsel for Plaintiff Miller has been and continues to attempt to retrieve Plantiff Miller's medical records from the DCC and schedule an examination with an expert witness.[428]

119.    The Health Care Defendants' actions constitute continuous negligent medical treatment.[429]

120.    Despite his attempts, Plaintiff Miller, while incarcerated at the DCC, could not in the exercise of reasonable diligence discover and identify the source of his injury.[430]

121.    As a direct and proximate result of the acts and failures of the Health Care Defendants, Plaintiff Miller sustained injuries which have caused and will cause pain, suffering, disability, helplessness, inconvenience, mental and emotional distress, and a dimunition of life's pleasures.[431]

122.    As a further direct and proximate result of the Health Care Defendants' negligence, Plaintiff Miller will require specialized medical attention, at significant expense.[432]

123.    As a further direct and proximate result of the Health Care Defendants' negligence, Plaintiff Miller has sustained an impairment of his capacity to earn a living upon his release from the DCC.[433]

## REQUEST FOR RELIEF[434]

WHEREFORE, Plaintiff ~~respectfully pray that this court enter judgement~~ [435]Miller requests with respect to Defendants:[436]

~~granting Plaintiff:~~[437]

~~1.  A declaratory judgment that the defendants~~[438]

a.    Judgment that State Defendants'[439] acts, policies ,[440]and practices,[441] described herein,[442] violate Plaintiff'[443] Miller'[444]s rights under the Eighth Amendment of the [445]United States Constitution.[446]

~~2.  A preliminary and permanent injunction which:~~[447]

~~A.  Requires defendants THOMAS CARROLL (Warden) and DR. ALIE (MEDICAL DIRECTOR) to rescind the policy directive concerning denial of treatment and to have regulations which prohibits such practices in the future, especially when such treatment is necessary and can prevent unnecessary risk to prisoners health and safety.~~[448] and constitute deliberate indifference to Plaintiff Miller's serious medical needs;[449]

b.    Judgment that Health Care Defendants' acts, policies, and practices, described herein, violate Plaintiff Miller's rights under the Eighth Amendment of the United States Constitution and constitute deliberate indifference to Plaintiff Miller's serious medical needs;[450]

c.    Judgment that defendants' acts, policies, and practices, described herein, violate Plaintiff Miller's rights under the Fourteenth Amendment of the United States Constitution;[451]

d.     Judgment that Health Care Defendants' actions constitute medical negligence;[452]

e.     An award of compensatory damages to be determined at trial;[453]

f.     An award of punitive damages in an amount to punish and deter similar conduct in the future;[454]

g.     An award of Plaintiff Miller's reasonable attorney fees in accordance with 42 U.S.C. § 1988;[455]

B.     ~~Prohibits defendants, their agents, employees, successsors in interest and all other persons in active concert or participation with them; from harassing, threatening, punishing or retaliating in any way against the plaintiff because he filed this action or from~~[456] h.     An order permanently restraining, enjoining or prohibiting all Defendants, in their individual and official capacities, from undertaking, enforcing, maintaining or adopting any policies, procedures, practices or acts, including, but not limited to,[457] transferring Plaintiff Miller [458] to any other institution without his ~~express~~[459] consent~~,~~[460] during the pendency of this action~~.~~[461], that are retaliatory in character against Plaintiff Miller for his commencement and prosecution of this action; [462]

C.  ~~Requires defendants to treat Plaintiff to the best of their ability and to have Plaintiff seen by a foot specialist ( podiatrist ) to determine what course of action needs to be followed henceforth.~~[463]

3.  ~~Compensatory damages in the amount of $20,000. to Plaintiff MILLER from all defendants and each of them.~~[464]

4.  ~~Punitive damages of $20,000. from defendant DR. Alie and defendant RN Ihoma.~~[465]

i.     An order requiring Defendants to diagnose and treat Plaintiff Miller, including, but not limited to, an examination by a podiatrist or other foot specialist; and[466]

j.    All other legal and equitable relief that the Court deems just and proper.[467]

JURY DEMAND[468]

5.    Trial[469]Plaintiff Miller demands a trial[470] by jury on[471]of[472] all issues triable by jury[473]as of right by a jury in this action[474].

6.  Plaintiff's cost of this suit.[475]

7.  Such other and further relief as this court may deem just, proper and equitable[476]

Respectfully Submitted,[477]
JULIAN A. MILLER[478]
393626[479]

Dated:[480] 3-3-05 —[481]June 9, 2006    FISH & RICHARDSON P.C.[482]

By:[483]
_____
Sean P. Hayes (#4413)[484]
hayes@fr.com[485]
919 N. Market Street, Suite 1100[486]
Wilmington, DE 19899-1114[487]
Tel: (302) 652-5070[488]

Attorney for Plaintiff
Julian A. Miller[489]

second[490]amended complaint.doc