IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JULIAN A. MILLER,<br><br>    Plaintiff,<br><br> v.<br><br>STANLEY TAYLOR, individually and in his official capacity as Commissioner of the Delaware Department of Correction; THOMAS CARROLL, individually and in his official capacity as Warden of the Delaware Correctional Center at Smyrna; DR. ALIE, individually and in her official capacity as Medical Director at DCC Smyrna; RN IHOMA, individually and in her official capacity as Registered Nurse at DCC Smyrna,<br><br>    Defendants. | | C.A. No. 04-1367-KAJ |

**DECLARATION OF PLAINTIFF JULIAN MILLER IN OPPOSITION TO STATE DEFENDANTS' JOINT MOTION TO DISMISS PURSUANT TO RULES 12(B)(1) AND 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND IN SUPPORT OF HIS MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

Dated:  May 23, 2006

FISH & RICHARDSON P.C.


Sean P. Hayes (I.D. No. 4413)
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
(302) 652-5070
hayes@fr.com

*Attorney for Plaintiff*
*Julian A. Miller*

I, JULIAN A. MILLER, declare as follows:

1.    I am the Plaintiff in the above-captioned matter pending before the United States District Court for the District of Delaware.  I make this declaration of my own personal knowledge, and if called upon as a witness would competently testify to the facts set forth in this declaration.

2.    On or about January 15, 2004, my feet began to ache in and around the arch area of my feet.  Prior to this, I had no pain or medical problems with my feet.

3.    To alleviate the pain, I soaked my feet at night and massaged them.  This alleviated the pain for one to two weeks.

4.    After approximately two weeks, I realized that I could not alleviate the pain, and I submitted a sick-call slip on January 27, 2004.

5.    The January 27, 2004 sick-call slip has not been returned to me.  I believe the January 27, 2004 sick-call slip is a part of the medical files at the Delaware Correctional Center ("DCC").

6.    When a sick call slip is submitted, the inmate's name is placed on a list to appear at the hospital to see a nurse or doctor.

7.    On February 4, 2004, I was seen at the hospital by Registered Nurse Ihoma ("RN Ihoma").  Upon hearing my symptoms and condition, RN Ihoma responded, "We do not issue sneakers or corrective shoes anymore."  RN Ihoma provided me with pain medication and stated that she ordered arch supports.  RN Ihoma took no further actions to examine or treat my condition.

8.    I believe that the actions taken by RN Ihoma were part of a cost-saving policy initiated by First Correctional Medical ("FCM"), which FCM knew denied medical care to DCC inmates, causing or exacerbating inmates' injuries.

9.    On February 16, 2004, I submitted  a second sick-call slip detailing my inability to sleep or walk properly due to the pain in my feet.

10.    In response to the second sick-call slip, I was not placed on a list and was therefore unable to obtain medical care at the hospital. Instead, RN Ihoma mailed me a form which stated that I'd already been seen on this matter. A copy of RN Ihoma's response to the February 16, 2004 sick-call slip is attached hereto as Exhibit A.

11.    On February 22, 2004, I submitted a third sick-call slip notifying the medical staff that the pain medication provided by RN Ihoma had no effect on my pain. I also indicated that I was unable to sleep through the night because of the pain in my feet. A copy of the February 22, 2004 sick-call slip is attached hereto as Exhibit B.

12.    I received no response to my February 22, 2004 sick-call slip.

13.    On March 4, 2004, I submitted a medical grievance regarding my deteriorating medical condition. In this grievance, I noted that I had not received the arch supports supposedly ordered following my February 4, 2004 hospital visit. A copy of the March 4, 2004 grievance and the notice of informal resolution to the grievance are attached hereto as Exhibit C.

14.    On March 9, 2004, I submitted a fourth sick-call slip reiterating that I was unable to sleep through the night because of the pain in my feet. Additionally, I noted that I still had not received the arch supports supposedly ordered following my February 4, 2004 hospital visit. A copy of the March 9, 2004 sick-call slip is attached hereto as Exhibit D.

15.    On March 13, 2004, I wrote a detailed letter to Medical Director Dr. Sitta B. Gombeh-Alie ("Dr. Alie") to notify her of my medical condition and of the inadequate medical care I was receiving. In that letter, I detailed the pain I was experiencing; the progression of my medical condition; my attempts to receive medical care through the filing of sick-call slips and grievances; the discontinuation of pain medication; and my efforts and desire to be examined. A copy of the March 13, 2004 letter is attached hereto as Exhibit E.

16.    I received a reply to this letter from Dr. Alie nearly two months later, on May 3, 2004, and was informed that I would be scheduled to be evaluated by her.

17.    On March 21, 2004, I submitted a fifth sick-call slip that described the intense pain I was suffering and the increased swelling in my feet and ankles.

18.    I received no response to the March 21, 2004 sick-call slip.

19.    The March 21, 2004 sick-call slip has not been returned to me. I believe the March 21, 2004 sick-call slip is a part of the medical files at the DCC.

20.    On March 23, 2004, seven weeks after they were supposedly ordered following my February 4, 2004 hospital visit, I finally received hard, plastic arch supports. The delivery date of the arch supports is indicated on the March 25, 2004 notice of informal resolution. See Exhibit C.

21.    During the nearly two month lapse between my February hospital visit and receipt of the arch supports, my untreated medical condition worsened. When finally used, the arch supports actually caused more pain. I was instructed to use the supports for a month or two, and if my condition did not improve, to file another grievance.

22.    No explanation for the delay in receiving the arch supports was given. I believe that the delay was part of FCM's cost-saving policy, which FCM knew denied medical care to DCC inmates, causing or exacerbating inmates' injuries.

23.    On March 25, 2004, I appeared before registered nurse Terry Hastings, who was appointed to mediate the grievance filed by Plaintiff Miller on March 4, 2004. Registered nurse Hastings noted that I should have a follow up visit with Dr. Alie on a March 25, 2004 notice of informal resolution. See Exhibit D.

24.    On April 7, 2004, I submitted a sixth sick-call slip, which again described the pain I was suffering and the swelling in my feet, ankles, and calves.

25.    The April 7, 2004 sick-call slip has not been returned. I believe that the April 7, 2004 sick-call slip is a part of the medical files at the DCC.

26.     On April 19, 2004, I submitted a second grievance.  In this grievance, I described my untreated condition, which included the pain I was feeling, the swelling in my feet and legs, and my inability to sleep because of the pain.  Additionally, I expressed my desire to be examined by Dr. Alie, whom I was told during the March 24, 2004 grievance proceeding would examine me.  A copy of the April 19, 2004 grievance and the notice of informal resolution to the grievance are attached hereto as Exhibit F.

27.     On May 4, 2004, I finally saw Dr. Alie.  I attempted to describe my medical condition to defendant Alie and summarize my March 13, 2004 letter to her, but was interrupted by defendant Alie, who informed me that we were not there to discuss my feet.

28.     Without ever examining my feet, Dr. Alie informed me that I didn't qualify for sneakers or orthopedic shoes.  Upon my request, Dr. Alie wrote that I "d[id] not qualify for medically purchased shoes" on the Informal Resolution page from the March 4, 2004 grievance submission.  See Exhibit C.  This concluded the "examination."

29.     I believe that Dr. Alie's decision that I did not qualify for medically purchased shoes is part of FCM's cost-saving policy, which FCM knew denied medical care to DCC inmates, causing or exacerbating inmates' injuries.

30.     Following the May 4, 2004 "examination," Defendant Alie discontinued my pain medication.  A copy of a May 24, 2004 sick-call slip, indicating the discontinuation of my pain medication, is attached hereto as Exhibit G.

31.     On May 7, 2004, I appeared before registered nurse Edith Rivera, who was appointed as grievance mediator for the April 14, 2004 grievance submission.  I was told for the first time that Dr. Alie had diagnosed my condition as post-therpetic neuralgia and had prescribed the drug Gabapentin.  See Exhibit F.

32.     On May 14, 2004, I submitted a third grievance describing the increasing foot problems and my inability to walk.  Additionally, I requested to be seen by an

outside physician. A copy of the May 14, 2004 grievance and the notice of informal resolution to the grievance are attached hereto as Exhibit H.

33.     On May 14, 2004, I wrote to DCC Warden Thomas Carroll ("Warden Carroll") informing him in detail of my medical condition, my repeated attempts to receive medical care, and the lack of health care being provided to me by the DCC medical staff.

34.     I received no response from Warden Carroll.

35.     I believe that this correspondence was delivered to Warden Carroll.

36.     On May 14, 2004, I wrote to Commissioner of Corrections Stanley Taylor ("Commissioner Taylor") informing him in detail of my medical condition, my repeated attempts to receive medical care, and the lack of health care being provided to me by the DCC medical staff.

37.     I received no response from Commissioner Taylor.

38.     I believe that this correspondence was delivered to Commissioner Taylor.

39.     On May 17, 2004, I submitted an eighth sick-call slip indicating that I was still experiencing pain and swelling in my feet and that I had not yet received the medication supposedly prescribed for me following Dr. Alie's May 4 "examination." A copy of the May 17, 2004 sick-call slip is attached hereto as Exhibit I.

40.     On May 24, 2004, I submitted a ninth sick-call slip indicating that I was experiencing pain and swelling in my feet and legs, that my pain medication was discontinued as of May 4, 2004, and that because of the pain, I was unable to sleep through the night. See Exhibit G.

41.     On June 1, 2004, I submitted an eleventh sick-call slip indicating that because of the pain in my feet, I was unable to sleep through the night. A copy of the June 1, 2004 sick-call slip is attached hereto as Exhibit J.

42.     Having received no response to my May 14, 2004 letter to Warden Carroll, I wrote a follow-up letter on June 14, 2004 to again notify him of lack of medical

care I was receiving for my feet and to ask him to take action to help resolve this situation. A copy of the June 14, 2004 letter to Warden Carroll is attached hereto as Exhibit K.

43.    Having received no response to my May 14, 2004 letter to Commissioner Taylor, I wrote a follow-up letter on June 14, 2004 to again notify him of lack of medical care I was receiving for my feet and to ask him to take action to help resolve this situation. A copy of the June 14, 2004 letter to Commissioner Taylor is attached hereto as Exhibit L.

44.    On July 6, 2004, I submitted a fourteenth sick-call slip indicating that I was experiencing swelling and pain in my feet. A copy of the July 6, 2004 sick-call slip is attached hereto as Exhibit M.

45.    On July 6, 2004, I appeared before registered nurse Terry Hastings, who was the mediator for the May 4, 2004 grievance. Registered nurse Hastings informed me that I had been approved for orthopedic shoes. See Exhibit H.

46.    On August 8, 2004, I submitted a fifteenth sick-call slip indicating that I was experiencing pain in my feet and requesting to see a foot specialist. A copy of the August 8, 2004 sick-call slip is attached hereto as Exhibit N.

47.    On August 18, 2004, I attended a Level II hearing led by director of First Correctional Medical Services Linda Hunter. The board's recommendation following the hearing was that I was to see a foot specialist and receive orthopedic shoes.

48.    On September 6, 2004, I submitted a medical grievance describing the pain I was suffering in my feet, my repeated requests to see a foot specialist, the loss of feeling I was experiencing in my toes, and my inability to sleep, exercise, or walk properly for nine months, since January, 2004. A copy of the September 6, 2004 medical grievance is attached hereto as Exhibit O.

49.    On September 7, 2004, I wrote to Warden Carroll for the third time regarding my medical condition and the lack of health care being provided to me. In

particular, I specifically provided the following information: my foot problems began in January, 2004; over the past nine months, I've filed numerous sick-call slips and grievances regarding this condition but I have been denied adequate medical care; nine months after submitting my initial sick-call slip, and despite repeated requests, my feet had not even been visually examined; I have persistent pain and swelling in my feet; I have begun to lose feeling in my toes; without any examination, Dr. Alie determined that I did not qualify for medically purchased shoes; I have requested to be seen by a foot specialist on at least three occasions; RN Ihoma informed me that because of a money-saving policy, the DCC no longer issues sneakers or corrective shoes; and I am unable to exercise, sleep, or walk properly because of my condition.  A copy of the September 7, 2004 letter to Warden Carroll is attached hereto as Exhibit P.

50.    After receiving three letters from me, I believe that Warden Carroll knew of my medical condition, the lack of treatment by Dr. Alie and RN Ihoma, and the cost-saving policy initiated by FCM.

51.    On September 9, 2004, I wrote to Commissioner Taylor for the third time regarding my medical condition and the lack of health care being provided to me.  In particular, I specifically provided the following information: my foot problems began in January, 2004; over the past nine months, I've filed numerous sick-call slips and grievances regarding this condition but I have been denied adequate medical care; nine months after submitting my initial sick-call slip, and despite repeated requests, my feet had not even been visually examined; I have persistent pain and swelling in my feet; I have begun to lose feeling in my toes; without any examination, Dr. Alie determined I did not qualify for medically purchased shoes; I have requested to be seen by a foot specialist on at least three occasions; RN Ihoma informed him that because of a money-saving policy, the DCC no longer issues sneakers or corrective shoes; RN Ihoma directed me to a memorandum signed by Dr. Alie regarding the DCC's money-saving policy regarding sneakers and corrective shoes; I am unable to exercise, sleep, or walk properly

because of my condition; my inability to ambulate has created a security problem at the DCC; Lieutenants Dixon, Satterfield, and Sekoy of the DCC have all inquired about my condition and have remarked about my inability to walk from my housing unit to the mess hall; Lieutenant Ryder of the DCC escorted me to the medical unit on an emergency basis as a result of me creating a security risk and inquired about the lack of medical treatment I have received.  A copy of the September 7, 2004 letter to Commissioner Taylor is attached hereto as Exhibit Q.

52.     After receiving three letters from me, I believe that Commissioner Taylor knew of my medical condition, the lack of treatment by Dr. Alie and RN Ihoma, and the cost-saving policy initiated by FCM.

53.     On September 14, 2004, registered nurse Terry Hastings issued a notice of informal resolution for the grievance filed on September 6, 2004, and noted that Dr. Alie continued to deny treatment and referred the grievance to Level II.  A copy of the informal resolution to the September 6, 2004 medical grievance is attached hereto as Exhibit R.

54.     On October 12, 2004, the grievance filed on September 6, 2004 was forwarded to the Medical Grievance Committee ("MGC").  A copy of the Grievance Information – IGC form indicating that the grievance was forwarded to the MGC is attached hereto as Exhibit S.

55.     On October 26, 2004, the Bureau Grievance Officer ("BGO") evaluated my appeal of the grievance filed on September 6, 2004, and "recommend[ed] that FCM immediately authorize an outside consult with a foot specialist to address the Grievant's condition."  A copy of the BGO's decision is attached hereto as Exhibit T.

56.     On January 3, 2005, the Bureau Chief concurred with the recommendation of the BGO and wrote a letter to me informing me that my request had been upheld.  A copy of the Bureau Chief's decision and letter to me are attached hereto as Exhibit U.

57.    Despite the Bureau Chief's decision and the extensive administrative procedure followed, I was not examined by an outside foot specialist until nine months later, and I did not receive orthopedic shoes until after that visit.

58.    I believe that Dr. Alie drafted a memorandum in January, 2004 that stated, among other things, that because of FCM's money-saving policies, the medical staff was no longer to issue orthopedic shoes or sneakers to inmates.

59.    I believe that the hiring of Dr. Alie by FCM as director of the medical staff at DCC was to save money, at the expense of the health care provided to inmates.

60.    I believe that Dr. Alie is a pediatrician and is not medically qualified to be director of the DCC medical staff.

61.    On October 18, 2004, I filed a complaint in the United States District Court for the District of Delaware as a result of the inadequate medical care I had received.

62.    On March 7, 2005, I filed an amended complaint and served Dr. Alie, RN Ihoma, Commissioner Taylor, and Warden Carroll.

63.    Dr. Alie, Commissioner Taylor, and Warden Carroll waived service of summons.  Copies of the waivers of service for Dr. Alie, Commissioner Taylor, and Warden Carroll are attached hereto as Exhibit V.

64.    RN Ihoma did not waive service of summons.  However, she did inform me that she received the complaint and no longer wanted to treat me since I filed a law suit naming her as a defendant.

65.    I did not receive orthopedic shoes or see a foot specialist until October, 2005 and January, 2006, respectively, after FCM was replaced as the health care provider at the DCC  by Correctional Medical Services.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing statements are true and correct.

Dated: May 24, 2006

_____
Julian A. Miller