IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Julian A. Miller<br><br>        Plaintiff,<br><br>v.<br><br>Stanley Taylor, individually; Thomas Carroll, individually; Dr. Sitta B. Gombeh-Alie, individually and in her official capacity as medical director at the Delaware Correctional Center at Smyrna; Registered Nurse Ihoma, individually and in her capacity as a registered nurse at the Delaware Correctional Center at Smyrna; and First Correctional Medical,<br><br>        Defendants. | Civil Action No. 04-1367 (KAJ)<br><br>Demand For Jury Trial |

### SECOND AMENDED COMPLAINT

Plaintiff Julian A. Miller, by and through his undersigned counsel, hereby files this Second Amended Complaint against Stanley Taylor, Thomas Carroll, Dr. Sitta B. Gombeh-Alie, Registered Nurse Ihoma, and First Correctional Medical requesting damages and injunctive relief.

NATURE OF THE ACTION

1.    Plaintiff Julian A. Miller ("Plaintiff Miller") is presently, and was at all times mentioned herein, incarcerated by the Delaware Department of Corrections. He is currently confined in the Delaware Correctional Center, Smyrna, Delaware.

2.    Plaintiff Miller has suffered and continues to suffer from pain in his feet.

3.    Defendants have violated Plaintiff Miller's rights guaranteed by the United States Constitution in failing to treat his medical condition.

4. The acts of defendants Dr. Sitta B. Gombeh-Alie, Registered Nurse Ihoma, and First Correctional Medical constitute medical malpractice.

5. By virtue of defendants' wrongful actions, Mr. Miller is entitled to damages and injunctive relief.

## THE PARTIES

6. Plaintiff Miller is, and was at all times relevant herein, incarcerated at the Delaware Correctional Center (the "DCC"), 118 Paddock Road, Smyrna, Delaware 19977.

7. Defendant Stanley Taylor ("Defendant Taylor"), at all times relevant herein, was employed as the commissioner of the Delaware Department of Corrections (the "DOC"). Defendant Taylor's duties included overseeing the operations of the DOC and the DCC.

8. Defendant Thomas Carroll ("Defendant Carroll"), at all times relevant herein, was employed as the warden of DCC. Defendant Carroll's duties included overseeing the operations of the DCC.

9. Defendant Dr. Sitta B. Gombeh-Alie ("Defendant Gombeh-Alie"), at all times relevant herein, was employed as the director of the medical staff at the DCC. Defendant Gombeh-Alie's duties included overseeing the operations of the medical department and providing health care to all inmates at the DCC.

10. Defendant Registered Nurse Ihoma ("Defendant Ihoma"), at all times relevant herein, was employed as a registered nurse at the DCC. Defendant Ihoma's duties included providing health care to inmates under her supervision at the DCC. Defendant Ihoma's full name is not currently known and will be ascertained during discovery.

11.   Defendant First Correctional Medical ("Defendant FCM"), at all times relevant herein, was the primary health-care provider for the DCC and was responsible for the overall health care and treatment for all inmates.

12.   The defendants may be categorized into the following groups: (1) the "State Defendants" being comprised of Stanley Taylor and Thomas Carroll; and (2) the "Health Care Defendants" being comprised of Dr. Sitta B. Gombeh-Alie, Registered Nurse Ihoma, and First Correctional Medical.

13.   All individual defendants and Defendant FCM acted under the color of state law and at all times mentioned herein were agents and employees of the State of Delaware.

14.   The State Defendants are sued in their individual capacities.

## JURISDICTION AND VENUE

15.   This action seeks injunctive relief and monetary damages for violations of the rights, privileges, and immunities secured under the United States Constitution, 42 U.S.C. § 1983 and an ancillary state law claim of medical negligence.

16.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

17.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) since the acts and transactions complained of herein occurred within this district.

## FACTS

18.   On or about January 15, 2004, Plaintiff Miller's feet began to ache in and around the arch area of his feet. Prior to this, Plaintiff Miller had no pain in or medical problems with his feet.

19. To alleviate the pain, Plaintiff Miller soaked his feet at night and massaged them. This alleviated the pain for one to two weeks.

20. After approximately two weeks, Plaintiff Miller realized he could not himself alleviate the pain, and he submitted a sick-call slip on January 27, 2004.

21. The January 27, 2004 sick-call slip has not been returned to Plaintiff Miller. On information and belief, the slip is a part of plaintiff's medical files at the DCC.

22. When a sick call slip is submitted, the inmate's name is placed on a list to appear at the hospital to see a nurse or doctor.

23. On February 4, 2004, Plaintiff Miller was seen at the hospital by Defendant Ihoma. Upon hearing Plaintiff's symptoms and condition, Defendant Ihoma responded, "We do not issue sneakers or corrective shoes anymore." Defendant Ihoma provided Plaintiff Miller with pain medication and stated that she ordered arch supports. Defendant Ihoma took no further actions to examine or treat Plaintiff Miller's condition.

24. On information and belief, the actions taken by Defendant Ihoma were part of a cost-saving policy initiated by Defendant FCM.

25. On February 16, 2004, Plaintiff Miller submitted a second sick-call slip detailing his inability to sleep or walk properly due to the pain in his feet.

26. In response to the second sick-call slip, Plaintiff Miller was not placed on a list and was therefore unable to obtain medical care at the hospital. Instead, Defendant Ihoma mailed Plaintiff Miller a form which stated that he'd already been seen on this matter. A copy of Defendant Ihoma's response to Plaintiff Miller's second sick-call slip is attached as Exhibit A to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

27. On February 22, 2004, Plaintiff Miller submitted a third sick-call slip notifying the medical staff that the pain medication provided to him by Defendant Ihoma had no effect on his pain. Plaintiff Miller also indicated that he was unable to sleep through the night because of the pain in his feet. A copy of Plaintiff Miller's third sick-call slip is attached as Exhibit B to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

28. Plaintiff Miller received no response to his February 22, 2004 sick-call slip.

29. On March 4, 2004, Plaintiff Miller submitted a medical grievance regarding his deteriorating medical condition. In his grievance, Plaintiff Miller noted that he had not received the arch supports supposedly ordered following his February 4, 2004 hospital visit. A copy of Plaintiff Miller's March 4, 2004 grievance is attached as Exhibit C to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

30. On March 9, 2004, Plaintiff Miller submitted a fourth sick-call slip reiterating that he was unable to sleep through the night because of the pain in his feet. Additionally, he noted that he still had not received the arch supports supposedly ordered following his February 4, 2004 hospital visit. A copy of the March 9, 2004 sick-call slip is attached as Exhibit D to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

31. On March 13, 2004, Plaintiff Miller wrote a detailed letter to Defendant Gombeh-Alie to notify her of his medical condition and of the inadequate medical care he

was receiving. In that letter, he detailed the pain he was experiencing; the progression of his medical condition; his attempts to receive medical care through the filing of sick-call slips and grievances; the discontinuation of pain medication; and his efforts and desire to be examined. A copy of the March 13, 2004 letter is attached as Exhibit E to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

32. On March 25, 2004, a full three weeks after submitting his grievance, Plaintiff Miller received a notice of informal resolution. In the informal resolution, Defendant Gombeh-Alie noted that Plaintiff Miller does not qualify for medically purchased shoes. A copy of the March 25, 2004 notice of informal resolution is attached as Exhibit D to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

33. Plaintiff Miller received a reply to his March 13, 2004 letter from Defendant Gombeh-Alie nearly two months later, on May 3, 2004, and was informed that he would be scheduled to be evaluated by her.

34. On March 21, 2004, Plaintiff Miller submitted a fifth sick-call slip that described the intense pain he was suffering and the increased swelling in his feet and ankles.

35. Plaintiff Miller received no response to his March 21, 2004 sick-call slip.

36. The March 21, 2004 sick-call slip has not been returned to Plaintiff Miller. On information and belief, the slip is a part of plaintiff's medical files at the DCC.

37. On March 23, 2004, seven weeks after they were supposedly ordered following his February 4, 2004 hospital visit, Plaintiff Miller finally received hard, plastic arch supports. The delivery date of the arch supports is indicated on the March 25, 2004

notice of informal resolution. *See* Exhibit C to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

38. During the nearly two month lapse between Plaintiff Miller's February hospital visit and receipt of the arch supports, his untreated medical condition worsened. When finally used, the arch supports actually caused more pain. Plaintiff Miller was instructed to use the supports for a month or two, and if his condition did not improve, to file another grievance.

39. No explanation for the delay in receiving the arch supports was given. On information and belief, the delay was due to Defendant FCM's cost-saving policy, which Defendant FCM knew denied medical care to DCC inmates, causing or exacerbating inmates' injuries.

40. On March 25, 2004, Plaintiff Miller appeared before registered nurse Terry Hastings, who was appointed to mediate the grievance filed by Plaintiff Miller on March 4, 2004. Registered nurse Hastings noted that Plaintiff Miller should have a follow up visit with Defendant Gombeh-Alie on a March 25, 2004 notice of informal resolution. See Exhibit D to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

41. On April 7, 2004, Plaintiff Miller submitted a sixth sick-call slip, which again described the pain he was suffering and the swelling in his feet, ankles, and calves.

42. The April 7, 2004 sick-call slip has not been returned to the Plaintiff. On information and belief, the sick-call slip is a part of plaintiff's medical files at the DCC.

43. On April 19, 2004, Plaintiff Miller submitted a second grievance. In this grievance, Plaintiff Miller described his untreated condition, which included the pain he

was feeling, the swelling in his feet and legs, and his inability to sleep because of the pain. Additionally, Plaintiff Miller expressed his desire to be examined by Defendant Gombeh-Alie, whom he was told during his March 24, 2004 grievance proceeding would examine him. A copy of the April 19, 2004 grievance and the notice of informal resolution to the grievance are attached as Exhibit F to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

44. On May 4, 2004, Plaintiff Miller finally saw Defendant Gombeh-Alie. Plaintiff Miller attempted to describe his medical condition to Defendant Gombeh-Alie and summarize his March 13, 2004 letter to her, but was interrupted by Defendant Gombeh-Alie, who informed him that they were not there to discuss his feet.

45. Without ever examining Plaintiff Miller's feet, Defendant Gombeh-Alie informed him that he didn't qualify for sneakers or orthopedic shoes. Upon Plaintiff Miller's request, Defendant Gombeh-Alie wrote that Plaintiff Miller "does not qualify for medically purchased shoes" on the Informal Resolution page from Plaintiff Miller's March 4, 2004 grievance submission. See Exhibit C to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint. This concluded Plaintiff Miller's "examination."

46. On information and belief, Defendant Gombeh-Alie's decision that Plaintiff Miller did not qualify for medically purchased shoes is part of FCM's cost-saving policy, which Defendant FCM knew denied medical care to DCC inmates, causing or exacerbating inmates' injuries.

47. Following Plaintiff Miller's May 4, 2004 "examination," Defendant Gombeh-Alie discontinued Plaintiff Miller's pain medication. A copy of a May 24, 2004

sick-call slip, indicating the discontinuation of my pain medication, is attached as Exhibit G to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

48.     On May 7, 2004, Plaintiff Miller appeared before registered nurse Edith Rivera, who was appointed as grievance mediator for his April 14, 2004 grievance submission. Plaintiff Miller was told for the first time that Defendant Gombeh-Alie had diagnosed his condition as post-therpetic neuralgia and had prescribed the drug Gabapentin. See Exhibit F to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

49.     On May 14, 2004, Plaintiff Miller submitted a third grievance describing his increasing foot problems and his inability to walk. Additionally, Plaintiff Miller requested to be seen by an outside physician. A copy of the May 14, 2004 grievance and the notice of informal resolution to the grievance are attached as Exhibit H to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

50.     On May 14, 2004, Plaintiff Miller wrote to Defendant Carroll informing him in detail of his medical condition, his repeated attempts to receive medical care, and the lack of health care being provided to him by the DCC medical staff.

51.     Plaintiff Miller received no response from Defendant Carroll.

52.     Plaintiff Miller received no indication that this correspondence was not delivered to Defendant Carroll.

53.     On information and belief, Defendant Carroll received this correspondence.

54. On May 14, 2004, Plaintiff Miller wrote to Defendant Taylor informing him in detail of his medical condition, his repeated attempts to receive medical care, and the lack of health care being provided to him by the DCC medical staff.

55. Plaintiff Miller received no response from Defendant Taylor.

56. Plaintiff Miller received no indication that this correspondence was not delivered to defendant Taylor.

57. On information and belief, Defendant Taylor received this correspondence.

58. On May 17, 2004, Plaintiff Miller submitted an eighth sick-call slip indicating that he was still experiencing pain and swelling in his feet and that he had not yet received the medication supposedly prescribed for him following Defendant Gombeh-Alie's May 4 "examination." A copy of the May 17, 2004 sick-call slip is attached as Exhibit I to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

59. On May 24, 2004, Plaintiff Miller submitted a ninth sick-call slip indicating that he was experiencing pain and swelling in his feet and legs, that his pain medication was discontinued as of May 4, 2004, and that because of the pain, he was unable to sleep through the night. See Exhibit G to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

60. On June 1, 2004, Plaintiff Miller submitted an eleventh sick-call slip indicating that because of the pain in his feet, he was unable to sleep through the night. A copy of the June 1, 2004 sick-call slip is attached as Exhibit J to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss

Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

61.     Having received no response to his May 14, 2004 letter to Defendant Carroll, Plaintiff Miller wrote a follow-up letter on June 14, 2004 to again notify him of the lack of medical care he was receiving for his feet and to ask him to take action to help resolve this situation. A copy of the June 14, 2004 letter to Defendant Carroll is attached as Exhibit K to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

62.     Having received no response to his May 14, 2004 letter to Defendant Taylor, Plaintiff Miller wrote a follow-up letter on June 14, 2004 to again notify him of lack of medical care he was receiving for his feet and to ask him to take action to help resolve this situation. A copy of the June 14, 2004 letter to Defendant Taylor is attached as Exhibit L to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

63.     On July 6, 2004, Plaintiff Miller submitted a fourteenth sick-call slip indicating that he was experiencing swelling and pain in his feet. A copy of the July 6, 2004 sick-call slip is attached as Exhibit M to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

64.     On July 6, 2004, Plaintiff Miller appeared before registered nurse Terry Hastings, who was the mediator for the May 4, 2004 grievance. Registered nurse Hastings informed Plaintiff Miller that he had been approved for orthopedic shoes. See

Exhibit H to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

65.     On August 8, 2004, Plaintiff Miller submitted a fifteenth sick-call slip indicating that he was experiencing pain in his feet and requesting to see a foot specialist. A copy of the August 8, 2004 sick-call slip is attached as Exhibit N to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

66.     On August 18, 2004, Plaintiff Miller attended a Level II hearing led by director of First Correctional Medical Services Linda Hunter. The board's recommendation following the hearing was that Plaintiff Miller was to see a foot specialist and receive orthopedic shoes.

67.     On September 6, 2004, Plaintiff Miller submitted a medical grievance describing the pain he was suffering in his feet, his repeated request to see a foot specialist, the loss of feeling he was experiencing in his toes, and his inability to sleep, exercise, or walk properly for nine months, since January, 2004, because of his condition. A copy of the September 6, 2004 medical grievance is attached as Exhibit O to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

68.     On September 7, 2004, Plaintiff Miller wrote to Defendant Carroll for the third time regarding his medical condition and the lack of health care being provided to him. In particular, Plaintiff Miller specifically provided the following information: his foot problems began in January, 2004; over the past nine months, he's filed numerous sick-call slips and grievances regarding this condition but he has been denied adequate medical care; nine months after submitting his initial sick-call slip, and despite repeated