requests, his feet had not even been visually examined; he has persistent pain and swelling in his feet; he has begun to lose feeling in his toes; without any examination, Defendant Gombeh-Alie determined he did not qualify for medically purchased shoes; he has requested to be seen by a foot specialist on at least three occasions; Defendant Ihoma informed him that because of a money-saving policy, the DCC no longer issues sneakers or corrective shoes; and he is unable to exercise, sleep, or walk properly because of his condition. A copy of the September 7, 2004 letter to Defendant Carroll is attached as Exhibit P to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

69. On information and belief, after receiving three letters from Plaintiff Miller, Defendant Carroll knew of his medical condition, the lack of treatment by Defendants Gombeh-Alie and Ihoma, and the cost-saving policy initiated by Defendant FCM.

70. On September 9, 2004, Plaintiff Miller wrote to Defendant Taylor for the third time regarding his medical condition and the lack of health care being provided to him. In particular, Plaintiff Miller specifically provided the following information: his foot problems began in January, 2004; over the past nine months, he's filed numerous sick-call slips and grievances regarding this condition but he has been denied adequate medical care; nine months after submitting his initial sick-call slip, and despite repeated requests, his feet had not even been visually examined; he has persistent pain and swelling in his feet; he has begun to lose feeling in his toes; without any examination, Defendant Gombeh-Alie determined he did not qualify for medically purchased shoes; he has requested to be seen by a foot specialist on at least three occasions; Defendant Ihoma informed him that because of a money-saving policy, the DCC no longer issues sneakers or corrective shoes; Defendant Ihoma directed him to a memorandum signed by Defendant Gombeh-Alie regarding the DCC's money saving policy regarding sneakers

and corrective shoes; he is unable to exercise, sleep, or walk properly because of his condition; his inability to ambulate has created a security problem at the DCC; Lieutenants Dixon, Satterfield, and Sekoy of the DCC have all inquired about his condition and have remarked about his inability to walk from his housing unit to the mess hall; Lieutenant Ryder of the DCC escorted him to the medical unit on an emergency basis as a result of Plaintiff Miller creating a security risk and inquired about the lack of medical treatment he has received. A copy of the September 7, 2004 letter to Commissioner Taylor is attached as Exhibit Q to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

71. On information and belief, after receiving three letters from Plaintiff Miller, Defendant Taylor knew of his medical condition, the lack of treatment by Defendants Gombeh-Alie and Ihoma, and the cost-saving policy initiated by Defendant FCM.

72. On September 14, 2004, registered nurse Terry Hastings issued a notice of informal resolution for the grievance filed on September 6, 2004, and noted that Defendant Gombeh-Alie continued to deny treatment and referred the grievance to Level II. A copy of the informal resolution to the September 6, 2004 medical grievance is attached as Exhibit R to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

73. On October 12, 2004, the grievance filed on September 6, 2004 was forwarded to the Medical Grievance Committee ("MGC"). A copy of the Grievance Information – IGC form indicating that the grievance was forwarded to the MGC is attached as Exhibit S to the Declaration Of Plaintiff Julian Miller in Opposition to State

Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

74. On October 26, 2004, the Bureau Grievance Officer ("BGO") evaluated Plaintiff Miller's appeal of the grievance filed on September 6, 2004, and "recommend[ed] that FCM immediately authorize an outside consult with a foot specialist to address the Grievant's condition." A copy of the BGO's decision is attached as Exhibit T to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

75. On January 3, 2005, the Bureau Chief concurred with the recommendation of the BGO and wrote a letter to Plaintiff Miller informing him that his request had been upheld. A copy of the Bureau Chief's decision and letter to me are attached as Exhibit U to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

76. Despite the Bureau Chief's decision and the extensive administrative procedure followed, Plaintiff Miller was not examined by an outside foot specialist until nine months later, and did not receive orthopedic shoes until after that visit.

77. On information and belief, Defendant Gombeh-Alie drafted a memorandum in January, 2004 that stated, among other things, that because of FCM's money-saving policies, the medical staff was no longer to issue orthopedic shoes or sneakers to inmates.

78. On information and belief, the hiring of Defendant Gombeh-Alie by Defendant FCM as director of the medical staff at DCC was to save money, at the expense of the health care provided to inmates.

79. On information and belief, Defendant Gombeh-Alie is a pediatrician and is not medically qualified to be director of the DCC medical staff.

80. On October 18, 2004, Plaintiff Miller filed a complaint in the United States District Court for the District of Delaware as a result of the inadequate medical care he had received.

81. On March 7, 2005, Plaintiff Miller filed an amended complaint and served Defendants Gombeh-Alie, Ihoma, Taylor, and Carroll.

82. Defendants Gombeh-Alie, Taylor, and Carroll waived service of summons. Copies of the waivers of service for Dr. Alie, Commissioner Taylor, and Warden Carroll are attached as Exhibit V to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

83. Defendant Ihoma did not waive service of summons. However, she informed Plaintiff Miller that she received the complaint and no longer wanted to treat him since he filed a law suit naming her as a defendant.

84. Plaintiff Miller did not receive orthopedic shoes or see a foot specialist until October, 2005 and January, 2006, respectively, after Defendant FCM was replaced as the health care provider at the DCC by Correctional Medical Services.

## CAUSES OF ACTION

### COUNT I – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED
(Against State Defendants)

85. Plaintiff Miller re-alleges paragraphs 1-84 of the Second Amended Complaint as is fully set forth herein.

86. The State of Delaware has an obligation to provide adequate medical care to individuals who are incarcerated in its prisons.

87. Defendants Taylor and Carroll, jointly and severally, acting in their individual capacities and under color of state law, were deliberately indifferent to Plaintiff Miller's rights, guaranteed by the Eighth Amendment of the United States Constitution, as shown by the following:

(a) They were sent multiple letters from Plaintiff Miller and had actual knowledge of specific instances in which the prison medical staff was mistreating or not treating Plaintiff Miller;

(b) They had actual knowledge of Plaintiff Miller's serious medical condition and that the lack of medical treatment exposed Plaintiff Miller to undue suffering;

(c) They had actual knowledge that Defendant FCM's cost-saving policy was implicated in Plaintiff Miller's inadequate medical care; and

(d) They failed to take any action to seek adequate medical care for Plaintiff Miller.

88. As a direct and proximate result of the of the State Defendants' failure to act on their knowledge of Plaintiff Miller's situation, Plaintiff Miller sustained injuries which have caused and will cause pain, suffering, disability, helplessness, inconvenience, mental and emotional distress, and a diminution of life's pleasures.

89. As a further direct and proximate result of the State Defendants' failure to act on their knowledge of Plaintiff Miller's situation, Plaintiff Miller will require specialized medical attention, at significant expense.

90. As a further direct and proximate result of the State Defendants' failure to act on their knowledge of Plaintiff Miller's situation, Plaintiff Miller has sustained an impairment of his capacity to earn a living upon his release from the DCC.

**COUNT II – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED**
**(Against Health Care Defendants)**

91. Plaintiff Miller re-alleges paragraphs 1-84 of the Second Amended Complaint as is fully set forth herein.

92. The State of Delaware has an obligation to provide adequate medical care to individuals who are incarcerated in its prisons.

93. Defendant FCM was the medical care provider for the DCC at all times pertinent hereto.

94. On information and belief, Defendant FCM initiated a cost-saving policy that resulted in a lack of medical care being provided to Plaintiff Miller.

95. Defendant Gombeh-Alie was the medical director at the DCC at all times pertinent hereto.

96. Defendant Ihoma was a registered nurse at the DCC at all times pertinent hereto.

97. Under color of state law, the Health Care Defendants' conduct evidenced a deliberate indifference to Plaintiff Miller's serious medical condition, and violated his rights guaranteed by the Eighth Amendment of the United States Constitution, in that they:

    (a) failed to or provide medical care and attention to Plaintiff Miller when he was suffering from a serious medical condition;

    (b) were negligent in providing care and attention to Plaintiff Miller, as its conduct fell below the accepted standard of care under the circumstances;

    (c) failed or refused to properly diagnose Plaintiff Miller's serious medical condition and take the reasonable steps necessary to prevent further pain and suffering;

    (d) failed or refused to schedule an examination with an outside foot specialist; and

    (e) failed to take proper and reasonable remedial measures to combat Plaintiff Miller's serious medical condition following "diagnosis" of his condition.

98. The Health Care Defendants acted with deliberate indifference towards Plaintiff Miller's serious medical condition in that they knew of Plaintiff Miller's condition after numerous sick-call slip submissions, filed grievances, and requests for medical care made personally by Plaintiff Miller and by DCC security staff; however, the Health Care Defendants failed or refused to provide medical care or attention.

99. As a direct and proximate result of the of the Health Care Defendants' failure to act on their knowledge of Plaintiff Miller's situation, Plaintiff Miller sustained injuries which have caused and will cause pain, suffering, disability, helplessness, inconvenience, mental and emotional distress, and a diminution of life's pleasures.

100. As a further direct and proximate result of the Health Care Defendants' failure to act on their knowledge of Plaintiff Miller's situation, Plaintiff Miller will require specialized medical attention, at significant expense.

101. As a further direct and proximate result of the Health Care Defendants' failure to act on their knowledge of Plaintiff Miller's situation, Plaintiff Miller has sustained an impairment of his capacity to earn a living upon his release from the DCC.

### COUNT III – DUE PROCESS OF LAW VIOLATION
### (Against All Defendants)

102. Plaintiff Miller re-alleges paragraphs 1-84 of the Second Amended Complaint as is fully set forth herein.

103. The State of Delaware has an obligation to provide adequate medical care to individuals who are incarcerated in its prisons.

104. Defendants failure to provide medical care constitutes punishment without due process of law, in violation of the Fourteenth Amendment of the United States Constitution.

105. As a direct and proximate result of the acts and failures of the defendants, Plaintiff Miller sustained injuries which have caused and will cause pain, suffering, disability, helplessness, inconvenience, mental and emotional distress, and a diminution of life's pleasures.

106. As a further direct and proximate result of the acts and failures of the defendants, Plaintiff Miller will require specialized medical attention, at significant expense.

107. As a further direct and proximate result of the acts and failures of the defendants, Plaintiff Miller has sustained an impairment of his capacity to earn a living upon his release from the DCC.

### COUNT IV – MEDICAL NEGLIGENCE
### (Against Health Care Defendants)

108. Plaintiff Miller re-alleges paragraphs 1-84 of the Second Amended Complaint as is fully set forth herein.

109. At all relevant times herein, agents, servants, and employees of Defendant FCM were acting in the course and scope of their employment for Defendant FCM.

110. Defendant and Defendant Gombeh-Alie is a physician licensed to practice medicine in the State of Delaware.

111. At all relevant times herein, Defendant Gombeh-Alie was acting within the course and scope of her employment by Defendant FCM.

112. Defendant Ihoma is a registered nurse licensed in the State of Delaware.

113. At all relevant times herein, Defendant Ihoma was acting within the course and scope of her employment by Defendant FCM.

114. During the course of his incarceration at the DCC from January, 2004 until FCM's contract as health care provider for the DCC was terminated, Plaintiff Miller was under the medical care of the Health Care Defendants.

115. On January 27, 2004, Plaintiff Miller first notified the FCM medical staff of his foot problems.

116. Plaintiff Miller submitted more than a dozen sick-call slips and three grievances seeking treatment for his medical condition.

117. Defendants Gombeh-Alie and Ihoma, and Defendant FCM, acting through its agents, servants, and employees, failed to render medical services to Plaintiff Miller in conformity with acceptable standards of care, and committed malpractice within the meaning of 18 Del. C. § 6801, in that they:

(a) Failed to monitor Plaintiff Miller's condition once it was identified;

(b) Failed to examine and properly diagnose Plaintiff Miller's condition;

(c) Failed to consult with a foot specialist or podiatrist regarding Plaintiff Miller's condition;

(d) Failed to provide orthopedic shoes to Plaintiff Miller for more than a year after Terry Hastings mediated a grievance file by Plaintiff Miller and informed him that he had been approved for orthopedic shoes;

(e) Discontinued pain medication despite repeated submissions of sick-call slips and grievances by Plaintiff Miller complaining of pain in his feet; and

(f) Failed to provide Plaintiff Miller with Gabapentin for his "diagnosed" condition for more than one month after it was prescribed.

118. Pursuant to 18 Del. C. § 6853, Plaintiff Miller will submit an affidavit of merit from an expert witness, within 60 days of filing the Second Amended Complaint. Counsel for Plaintiff Miller has been and continues to attempt to retrieve Plantiff Miller's medical records from the DCC and schedule an examination with an expert witness.

119. The Health Care Defendants' actions constitute continuous negligent medical treatment.

120. Despite his attempts, Plaintiff Miller, while incarcerated at the DCC, could not in the exercise of reasonable diligence discover and identify the source of his injury.

121. As a direct and proximate result of the acts and failures of the Health Care Defendants, Plaintiff Miller sustained injuries which have caused and will cause pain,

suffering, disability, helplessness, inconvenience, mental and emotional distress, and a dimunition of life's pleasures.

122. As a further direct and proximate result of the Health Care Defendants' negligence, Plaintiff Miller will require specialized medical attention, at significant expense.

123. As a further direct and proximate result of the Health Care Defendants' negligence, Plaintiff Miller has sustained an impairment of his capacity to earn a living upon his release from the DCC.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Miller requests with respect to Defendants:

a. Judgment that State Defendants' acts, policies, and practices, described herein, violate Plaintiff Miller's rights under the Eighth Amendment of the United States Constitution and constitute deliberate indifference to Plaintiff Miller's serious medical needs;

b. Judgment that Health Care Defendants' acts, policies, and practices, described herein, violate Plaintiff Miller's rights under the Eighth Amendment of the United States Constitution and constitute deliberate indifference to Plaintiff Miller's serious medical needs;

c. Judgment that defendants' acts, policies, and practices, described herein, violate Plaintiff Miller's rights under the Fourteenth Amendment of the United States Constitution;

d. Judgment that Health Care Defendants' actions constitute medical negligence;

e. An award of compensatory damages to be determined at trial;

f. An award of punitive damages in an amount to punish and deter similar conduct in the future;

 g. An award of Plaintiff Miller's reasonable attorney fees in accordance with 42 U.S.C. § 1988;

 h. An order permanently restraining, enjoining or prohibiting all Defendants, in their individual and official capacities, from undertaking, enforcing, maintaining or adopting any policies, procedures, practices or acts, including, but not limited to, transferring Plaintiff Miller to any other institution without his consent during the pendency of this action, that are retaliatory in character against Plaintiff Miller for his commencement and prosecution of this action;

 i. An order requiring Defendants to diagnose and treat Plaintiff Miller, including, but not limited to, an examination by a podiatrist or other foot specialist; and

 j. All other legal and equitable relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff Miller demands a trial by jury of all issues triable as of right by a jury in this action.

Dated: June 9, 2006   FISH & RICHARDSON P.C.

        By: */s/ Sean P. Hayes*
        Sean P. Hayes (#4413)
        hayes@fr.com
        919 N. Market Street, Suite 1100
        Wilmington, DE 19899-1114
        Tel: (302) 652-5070

        Attorney for Plaintiff
        Julian A. Miller

80033913.doc

23