# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ~~Julian A. Miller~~ | |
| | |
| ————————Plaintiff, | |
| ~~v.~~ | |
| ~~Stanley Taylor, individually; Thomas Carroll, individually; Dr. Sitta B. Gombeh-Alie, individually and in her official capacity as medical director at the Delaware Correctional Center at Smyrna; Registered Nurse Ihoma, individually and in her capacity as a registered nurse at the Delaware Correctional Center at Smyrna; and First Correctional Medical,~~ | |
| ————————~~Defendants.~~ | Civil Action No. 04-1367 (KAJ) |
| JULIAN A. MILLER, | |
| Plaintiff, | Demand For Jury Trial |
| v. | |
| STANLEY TAYLOR, individually and in his official capacity as Commissioner of the Delaware Department of Correction; THOMAS CARROLL, individually and in his official capacity as Warden of the Delaware Correctional Center at Smyrna; DR. ALIE, individually and in her official capacity as Medical Director at DCC Smyrna; IHUOMA CHUKS, individually and in her official capacity as a Nurse at DCC Smyrna; and First Correctional Medical, | |
| Defendants. | |

**~~SECOND~~THIRD AMENDED COMPLAINT**

Plaintiff Julian A. Miller, by and through his undersigned counsel, hereby files

this ~~Second~~Third Amended Complaint against Stanley Taylor, Thomas Carroll, Dr. Sitta

B. Gombeh-Alie, ~~Registered~~ Nurse ~~Ihoma~~Ihuoma Chuks, and First Correctional Medical requesting damages and injunctive relief.

<u>NATURE OF THE ACTION</u>

1.      Plaintiff Julian A. Miller ("Plaintiff Miller") is presently, and was at all times mentioned herein, incarcerated by the Delaware Department of Corrections.  He is currently confined in the Delaware Correctional Center, Smyrna, Delaware.

2.      Plaintiff Miller has suffered and continues to suffer from pain in his feet.

3.      Defendants have violated Plaintiff Miller's rights guaranteed by the United States Constitution in failing to treat his medical condition.

4.      The acts of defendants Dr. Sitta B. Gombeh-Alie, ~~Registered~~ Nurse ~~Ihoma~~Ihuoma Chuks, and First Correctional Medical constitute medical malpractice.

5.      By virtue of defendants' wrongful actions, Mr. Miller is entitled to damages and injunctive relief.

<u>THE PARTIES</u>

6.      Plaintiff Miller is, and was at all times relevant herein, incarcerated at the Delaware Correctional Center (the "DCC"), 118 Paddock Road, Smyrna, Delaware 19977.

7.      Defendant Stanley Taylor ("Defendant Taylor"), at all times relevant herein, was employed as the commissioner of the Delaware Department of Corrections (the "DOC").  Defendant Taylor's duties included overseeing the operations of the DOC and the DCC.

8.      Defendant Thomas Carroll ("Defendant Carroll"), at all times relevant herein, was employed as the warden of DCC.  Defendant Carroll's duties included overseeing the operations of the DCC.

2

9.    Defendant Dr. Sitta B. Gombeh-Alie ("Defendant Gombeh-Alie"), at all times relevant herein, was employed as the director of the medical staff at the DCC. Defendant Gombeh-Alie's duties included overseeing the operations of the medical department and providing health care to all inmates at the DCC.

10.    Defendant ~~Registered~~ Nurse ~~Ihoma~~Ihuoma Chuks ("Defendant ~~Ihoma~~Chuks"), at all times relevant herein, was employed as a ~~registered~~ nurse at the DCC. Defendant ~~Ihoma's~~Chuks' duties included providing health care to inmates under her supervision at the DCC. ~~Defendant Ihoma's full name is not currently known and will be ascertained during discovery.~~

11.    Defendant First Correctional Medical ("Defendant FCM"), at all times relevant herein, was the primary health-care provider for the DCC and was responsible for the overall health care and treatment for all inmates.

12.    The defendants may be categorized into the following groups: (1) the "State Defendants" being comprised of Stanley Taylor and Thomas Carroll; and (2) the "Health Care Defendants" being comprised of Dr. Sitta B. Gombeh-Alie, ~~Registered~~ Nurse ~~Ihoma~~Ihuoma Chuks, and First Correctional Medical.

13.    All individual defendants and Defendant FCM acted under the color of state law and at all times mentioned herein were agents and employees of the State of Delaware.

14.    The State Defendants are sued in their individual capacities.


<u>JURISDICTION AND VENUE</u>

15.    This action seeks injunctive relief and monetary damages for violations of the rights, privileges, and immunities secured under the United States Constitution, 42 U.S.C. § 1983 and an ancillary state law claim of medical negligence.

16.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

17.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) since the acts and transactions complained of herein occurred within this district.

<u>FACTS</u>

18.    On or about January 15, 2004, Plaintiff Miller's feet began to ache in and around the arch area of his feet.  Prior to this, Plaintiff Miller had no pain in or medical problems with his feet.

19.    To alleviate the pain, Plaintiff Miller soaked his feet at night and massaged them.  This alleviated the pain for one to two weeks.

20.    After approximately two weeks, Plaintiff Miller realized he could not himself alleviate the pain, and he submitted a sick-call slip on January 27, 2004.

21.    The January 27, 2004 sick-call slip has not been returned to Plaintiff Miller.  On information and belief, the slip is a part of plaintiff's medical files at the DCC.

22.    When a sick call slip is submitted, the inmate's name is placed on a list to appear at the hospital to see a nurse or doctor.

23.    On February 4, 2004, Plaintiff Miller was seen at the hospital by Defendant ~~Ihoma.~~Chuks.  Upon hearing Plaintiff's symptoms and condition, Defendant ~~Ihoma~~Chuks responded, "We do not issue sneakers or corrective shoes anymore." Defendant ~~Ihoma~~Chuks provided Plaintiff Miller with pain medication and stated that she ordered arch supports.  Defendant ~~Ihoma~~Chuks took no further actions to examine or treat Plaintiff Miller's condition.

24.    On information and belief, the actions taken by Defendant ~~Ihoma~~Chuks were part of a cost-saving policy initiated by Defendant FCM.

25.    On February 16, 2004, Plaintiff Miller submitted  a second sick-call slip detailing his inability to sleep or walk properly due to the pain in his feet.

26.    In response to the second sick-call slip, Plaintiff Miller was not placed on a list and was therefore unable to obtain medical care at the hospital.  Instead, Defendant

4

~~Ihoma~~Chuks mailed Plaintiff Miller a form which stated that he'd already been seen on this matter.  A copy of Defendant ~~Ihoma's~~Chuks' response to Plaintiff Miller's second sick-call slip is attached as Exhibit A to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.[1]

27.    On February 22, 2004, Plaintiff Miller submitted a third sick-call slip notifying the medical staff that the pain medication provided to him by Defendant ~~Ihoma~~Chuks had no effect on his pain.  Plaintiff Miller also indicated that he was unable to sleep through the night because of the pain in his feet.  A copy of Plaintiff Miller's third sick-call slip is attached as Exhibit B to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

28.    Plaintiff Miller received no response to his February 22, 2004 sick-call slip.

29.    On March 4, 2004, Plaintiff Miller submitted a medical grievance regarding his deteriorating medical condition.  In his grievance, Plaintiff Miller noted that he had not received the arch supports supposedly ordered following his February 4, 2004 hospital visit.  A copy of Plaintiff Miller's March 4, 2004 grievance is attached as Exhibit C to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

30.    On March 9, 2004, Plaintiff Miller submitted a fourth sick-call slip reiterating that he was unable to sleep through the night because of the pain in his feet.

---

[1] Exhibits referenced herein are attached to the Declaration of Julian Miller, as filed on June 9, 2006 (D.I. 41).

5

Additionally, he noted that he still had not received the arch supports supposedly ordered following his February 4, 2004 hospital visit. A copy of the March 9, 2004 sick-call slip is attached as Exhibit D to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

31.     On March 13, 2004, Plaintiff Miller wrote a detailed letter to Defendant Gombeh-Alie to notify her of his medical condition and of the inadequate medical care he was receiving. In that letter, he detailed the pain he was experiencing; the progression of his medical condition; his attempts to receive medical care through the filing of sick-call slips and grievances; the discontinuation of pain medication; and his efforts and desire to be examined. A copy of the March 13, 2004 letter is attached as Exhibit E to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

32.     On March 25, 2004, a full three weeks after submitting his grievance, Plaintiff Miller received a notice of informal resolution. In the informal resolution, Defendant Gombeh-Alie noted that Plaintiff Miller does not qualify for medically purchased shoes. A copy of the March 25, 2004 notice of informal resolution is attached as Exhibit D to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

33.     Plaintiff Miller received a reply to his March 13, 2004 letter from Defendant Gombeh-Alie nearly two months later, on May 3, 2004, and was informed that he would be scheduled to be evaluated by her.

34.     On March 21, 2004, Plaintiff Miller submitted a fifth sick-call slip that described the intense pain he was suffering and the increased swelling in his feet and ankles.

35.     Plaintiff Miller received no response to his March 21, 2004 sick-call slip.

36.     The March 21, 2004 sick-call slip has not been returned to Plaintiff Miller. On information and belief, the slip is a part of plaintiff's medical files at the DCC.

37.     On March 23, 2004, seven weeks after they were supposedly ordered following his February 4, 2004 hospital visit, Plaintiff Miller finally received hard, plastic arch supports.  The delivery date of the arch supports is indicated on the March 25, 2004 notice of informal resolution.  *See* Exhibit C to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

38.     During the nearly two month lapse between Plaintiff Miller's February hospital visit and receipt of the arch supports, his untreated medical condition worsened. When finally used, the arch supports actually caused more pain.  Plaintiff Miller was instructed to use the supports for a month or two, and if his condition did not improve, to file another grievance.

39.     No explanation for the delay in receiving the arch supports was given.  On information and belief, the delay was due to Defendant FCM's cost-saving policy, which Defendant FCM knew denied medical care to DCC inmates, causing or exacerbating inmates' injuries.

40.     On March 25, 2004, Plaintiff Miller appeared before registered nurse Terry Hastings, who was appointed to mediate the grievance filed by Plaintiff Miller on March 4, 2004.  Registered nurse Hastings noted that Plaintiff Miller should have a follow up visit with Defendant Gombeh-Alie on a March 25, 2004 notice of informal resolution.  See Exhibit D to the Declaration Of Plaintiff Julian Miller in Opposition to

7

State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

41.     On April 7, 2004, Plaintiff Miller submitted a sixth sick-call slip, which again described the pain he was suffering and the swelling in his feet, ankles, and calves.

42.     The April 7, 2004 sick-call slip has not been returned to the Plaintiff.  On information and belief, the sick-call slip is a part of plaintiff's medical files at the DCC.

43.     On April 19, 2004, Plaintiff Miller submitted a second grievance.  In this grievance, Plaintiff Miller described his untreated condition, which included the pain he was feeling, the swelling in his feet and legs, and his inability to sleep because of the pain.  Additionally, Plaintiff Miller expressed his desire to be examined by Defendant Gombeh-Alie, whom he was told during his March 24, 2004 grievance proceeding would examine him.  A copy of the April 19, 2004 grievance and the notice of informal resolution to the grievance are attached as Exhibit F to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

44.     On May 4, 2004, Plaintiff Miller finally saw Defendant Gombeh-Alie.  Plaintiff Miller attempted to describe his medical condition to Defendant Gombeh-Alie and summarize his March 13, 2004 letter to her, but was interrupted by Defendant Gombeh-Alie, who informed him that they were not there to discuss his feet.

45.     Without ever examining Plaintiff Miller's feet, Defendant Gombeh-Alie informed him that he didn't qualify for sneakers or orthopedic shoes.  Upon Plaintiff Miller's request, Defendant Gombeh-Alie wrote that Plaintiff Miller "does not qualify for medically purchased shoes" on the Informal Resolution page from Plaintiff Miller's March 4, 2004 grievance submission.  See Exhibit C to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules

8

12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.  This concluded Plaintiff Miller's "examination."

46.    On information and belief, Defendant Gombeh-Alie's decision that Plaintiff Miller did not qualify for medically purchased shoes is part of FCM's cost-saving policy, which Defendant FCM knew denied medical care to DCC inmates, causing or exacerbating inmates' injuries.

47.    Following Plaintiff Miller's May 4, 2004 "examination," Defendant Gombeh-Alie discontinued Plaintiff Miller's pain medication.  A copy of a May 24, 2004 sick-call slip, indicating the discontinuation of my pain medication, is attached as Exhibit G to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

48.    On May 7, 2004, Plaintiff Miller appeared before registered nurse Edith Rivera, who was appointed as grievance mediator for his April 14, 2004 grievance submission.  Plaintiff Miller was told for the first time that Defendant Gombeh-Alie had diagnosed his condition as post-therpetic neuralgia and had prescribed the drug Gabapentin.  See Exhibit F to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

49.    On May 14, 2004, Plaintiff Miller submitted a third grievance describing his increasing foot problems and his inability to walk.  Additionally, Plaintiff Miller requested to be seen by an outside physician.  A copy of the May 14, 2004 grievance and the notice of informal resolution to the grievance are attached as Exhibit H to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to

9

Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

50.    On May 14, 2004, Plaintiff Miller wrote to Defendant Carroll informing him in detail of his medical condition, his repeated attempts to receive medical care, and the lack of health care being provided to him by the DCC medical staff.

51.    Plaintiff Miller received no response from Defendant Carroll.

52.    Plaintiff Miller received no indication that this correspondence was not delivered to Defendant Carroll.

53.    On information and belief, Defendant Carroll received this correspondence.

54.    On May 14, 2004, Plaintiff Miller wrote to Defendant Taylor informing him in detail of his medical condition, his repeated attempts to receive medical care, and the lack of health care being provided to him by the DCC medical staff.

55.    Plaintiff Miller received no response from Defendant Taylor.

56.    Plaintiff Miller received no indication that this correspondence was not delivered to defendant Taylor.

57.    On information and belief, Defendant Taylor received this correspondence.

58.    On May 17, 2004, Plaintiff Miller submitted an eighth sick-call slip indicating that he was still experiencing pain and swelling in his feet and that he had not yet received the medication supposedly prescribed for him following Defendant Gombeh-Alie's May 4 "examination."  A copy of the May 17, 2004 sick-call slip is attached as Exhibit I to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

59.    On May 24, 2004, Plaintiff Miller submitted a ninth sick-call slip indicating that he was experiencing pain and swelling in his feet and legs, that his pain

10

medication was discontinued as of May 4, 2004, and that because of the pain, he was unable to sleep through the night. *See* Exhibit G to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

60.    On June 1, 2004, Plaintiff Miller submitted an eleventh sick-call slip indicating that because of the pain in his feet, he was unable to sleep through the night.  A copy of the June 1, 2004 sick-call slip is attached as Exhibit J to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

61.    Having received no response to his May 14, 2004 letter to Defendant Carroll, Plaintiff Miller wrote a follow-up letter on June 14, 2004 to again notify him of the lack of medical care he was receiving for his feet and to ask him to take action to help resolve this situation.  A copy of the June 14, 2004 letter to Defendant Carroll is attached as Exhibit K to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

62.    Having received no response to his May 14, 2004 letter to Defendant Taylor, Plaintiff Miller wrote a follow-up letter on June 14, 2004 to again notify him of lack of medical care he was receiving for his feet and to ask him to take action to help resolve this situation.  A copy of the June 14, 2004 letter to Defendant Taylor is attached as Exhibit L to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

63.     On July 6, 2004, Plaintiff Miller submitted a fourteenth sick-call slip indicating that he was experiencing swelling and pain in his feet.  A copy of the July 6, 2004 sick-call slip is attached as Exhibit M to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

64.     On July 6, 2004, Plaintiff Miller appeared before registered nurse Terry Hastings, who was the mediator for the May 4, 2004 grievance.  Registered nurse Hastings informed Plaintiff Miller that he had been approved for orthopedic shoes.  See Exhibit H to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

65.     On August 8, 2004, Plaintiff Miller submitted a fifteenth sick-call slip indicating that he was experiencing pain in his feet and requesting to see a foot specialist. A copy of the August 8, 2004 sick-call slip is attached as Exhibit N to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

66.     On August 18, 2004, Plaintiff Miller attended a Level II hearing led by director of First Correctional Medical Services Linda Hunter.  The board's recommendation following the hearing was that Plaintiff Miller was to see a foot specialist and receive orthopedic shoes.

67.     On September 6, 2004, Plaintiff Miller submitted a medical grievance describing the pain he was suffering in his feet, his repeated request to see a foot specialist, the loss of feeling he was experiencing in his toes, and his inability to sleep, exercise, or walk properly for nine months, since January, 2004, because of his condition. A copy of the September 6, 2004 medical grievance is attached as Exhibit O to the

Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

68.     On September 7, 2004, Plaintiff Miller wrote to Defendant Carroll for the third time regarding his medical condition and the lack of health care being provided to him.  In particular, Plaintiff Miller specifically provided the following information: his foot problems began in January, 2004; over the past nine months, he's filed numerous sick-call slips and grievances regarding this condition but he has been denied adequate medical care; nine months after submitting his initial sick-call slip, and despite repeated requests, his feet had not even been visually examined; he has persistent pain and swelling in his feet; he has begun to lose feeling in his toes; without any examination, Defendant Gombeh-Alie determined he did not qualify for medically purchased shoes; he has requested to be seen by a foot specialist on at least three occasions; Defendant ~~Thoma~~Chuks informed him that because of a money-saving policy, the DCC no longer issues sneakers or corrective shoes; and he is unable to exercise, sleep, or walk properly because of his condition.  A copy of the September 7, 2004 letter to Defendant Carroll is attached as Exhibit P to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

69.     On information and belief, after receiving three letters from Plaintiff Miller, Defendant Carroll knew of his medical condition, the lack of treatment by Defendants Gombeh-Alie and ~~Thoma~~Chuks, and the cost-saving policy initiated by Defendant FCM.

70.     On September 9, 2004, Plaintiff Miller wrote to Defendant Taylor for the third time regarding his medical condition and the lack of health care being provided to him.  In particular, Plaintiff Miller specifically provided the following information: his

13

foot problems began in January, 2004; over the past nine months, he's filed numerous sick-call slips and grievances regarding this condition but he has been denied adequate medical care; nine months after submitting his initial sick-call slip, and despite repeated requests, his feet had not even been visually examined; he has persistent pain and swelling in his feet; he has begun to lose feeling in his toes; without any examination, Defendant Gombeh-Alie determined he did not qualify for medically purchased shoes; he has requested to be seen by a foot specialist on at least three occasions; Defendant ~~Ihoma~~Chuks informed him that because of a money-saving policy, the DCC no longer issues sneakers or corrective shoes; Defendant ~~Ihoma~~Chuks directed him to a memorandum signed by Defendant Gombeh-Alie regarding the DCC's money saving policy regarding sneakers and corrective shoes; he is unable to exercise, sleep, or walk properly because of his condition; his inability to ambulate has created a security problem at the DCC; Lieutenants Dixon, Satterfield, and Sekoy of the DCC have all inquired about his condition and have remarked about his inability to walk from his housing unit to the mess hall; Lieutenant Ryder of the DCC escorted him to the medical unit on an emergency basis as a result of Plaintiff Miller creating a security risk and inquired about the lack of medical treatment he has received.  A copy of the September 7, 2004 letter to Commissioner Taylor is attached as Exhibit Q to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

71.    On information and belief, after receiving three letters from Plaintiff Miller, Defendant Taylor knew of his medical condition, the lack of treatment by Defendants Gombeh-Alie and ~~Ihoma~~Chuks, and the cost-saving policy initiated by Defendant FCM.

72.    On September 14, 2004, registered nurse Terry Hastings issued a notice of informal resolution for the grievance filed on September 6, 2004, and noted that

14

Defendant Gombeh-Alie continued to deny treatment and referred the grievance to Level II.  A copy of the informal resolution to the September 6, 2004 medical grievance is attached as Exhibit R to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

       73.     On October 12, 2004, the grievance filed on September 6, 2004 was forwarded to the Medical Grievance Committee ("MGC").  A copy of the Grievance Information – IGC form indicating that the grievance was forwarded to the MGC is attached as Exhibit S to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

       74.     On October 26, 2004, the Bureau Grievance Officer ("BGO") evaluated Plaintiff Miller's appeal of the grievance filed on September 6, 2004, and "recommend[ed] that FCM immediately authorize an outside consult with a foot specialist to address the Grievant's condition."  A copy of the BGO's decision is attached as Exhibit T to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

       75.     On January 3, 2005, the Bureau Chief concurred with the recommendation of the BGO and wrote a letter to Plaintiff Miller informing him that his request had been upheld.  A copy of the Bureau Chief's decision and letter to me are attached as Exhibit U to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

76.     Despite the Bureau Chief's decision and the extensive administrative procedure followed, Plaintiff Miller was not examined by an outside foot specialist until nine months later, and did not receive orthopedic shoes until after that visit.

77.     On information and belief, Defendant Gombeh-Alie drafted a memorandum in January, 2004 that stated, among other things, that because of FCM's money-saving policies, the medical staff was no longer to issue orthopedic shoes or sneakers to inmates.

78.     On information and belief, the hiring of Defendant Gombeh-Alie by Defendant FCM as director of the medical staff at DCC was to save money, at the expense of the health care provided to inmates.

79.     On information and belief, Defendant Gombeh-Alie is a pediatrician and is not medically qualified to be director of the DCC medical staff.

80.     On October 18, 2004, Plaintiff Miller filed a complaint in the United States District Court for the District of Delaware as a result of the inadequate medical care he had received.

81.     On March 7, 2005, Plaintiff Miller filed an amended complaint and served Defendants Gombeh-Alie, ~~Ihoma~~Chuks, Taylor, and Carroll.

82.     Defendants Gombeh-Alie, Taylor, and Carroll waived service of summons.  Copies of the waivers of service for Dr. Alie, Commissioner Taylor, and Warden Carroll are attached as Exhibit V to the Declaration Of Plaintiff Julian Miller in Opposition to State Defendants' Joint Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules of Civil Procedure and in Support of Julian Miller's Motion to Amend the Complaint.

83.     Defendant ~~Ihoma~~Chuks did not waive service of summons.  However, she informed Plaintiff Miller that she received the complaint and no longer wanted to treat him since he filed a law suit naming her as a defendant.

16

84.    Plaintiff Miller did not receive orthopedic shoes or see a foot specialist until October, 2005 and January, 2006, respectively, after Defendant FCM was replaced as the health care provider at the DCC  by Correctional Medical Services.

<u>CAUSES OF ACTION</u>

**COUNT I – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED**
**(Against State Defendants)**

85.    Plaintiff Miller re-alleges paragraphs 1-84 of the Second Amended Complaint as is fully set forth herein.

86.    The State of Delaware has an obligation to provide adequate medical care to individuals who are incarcerated in its prisons.

87.    Defendants Taylor and Carroll, jointly and severally, acting in their individual capacities and under color of state law, were deliberately indifferent to Plaintiff Miller's rights, guaranteed by the Eighth Amendment of the United States Constitution, as shown by the following:

(a)    They were sent multiple letters from Plaintiff Miller and had actual knowledge of specific instances in which the prison medical staff was mistreating or not treating Plaintiff Miller;

(b)    They had actual knowledge of Plaintiff Miller's serious medical condition and that the lack of medical treatment exposed Plaintiff Miller to undue suffering;

(c)    They had actual knowledge that Defendant FCM's cost-saving policy was implicated in Plaintiff Miller's inadequate medical care; and

(d)    They failed to take any action to seek adequate medical care for Plaintiff Miller.

88.    As a direct and proximate result of the of the State Defendants' failure to act on their knowledge of Plaintiff Miller's situation, Plaintiff Miller sustained injuries

17

which have caused and will cause pain, suffering, disability, helplessness, inconvenience, mental and emotional distress, and a dimunition of life's pleasures.

89.    As a further direct and proximate result of the State Defendants' failure to act on their knowledge of Plaintiff Miller's situation, Plaintiff Miller will require specialized medical attention, at significant expense.

90.    As a further direct and proximate result of the State Defendants' failure to act on their knowledge of Plaintiff Miller's situation, Plaintiff Miller has sustained an impairment of his capacity to earn a living upon his release from the DCC.

### COUNT II – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED
### (Against Health Care Defendants)

91.    Plaintiff Miller re-alleges paragraphs 1-84 of the Second Amended Complaint as is fully set forth herein.

92.    The State of Delaware has an obligation to provide adequate medical care to individuals who are incarcerated in its prisons.

93.    Defendant FCM was the medical care provider for the DCC at all times pertinent hereto.

94.    On information and belief, Defendant FCM initiated a cost-saving policy that resulted in a lack of medical care being provided to Plaintiff Miller.

95.    Defendant Gombeh-Alie was the medical director at the DCC at all times pertinent hereto.

96.    Defendant ~~Ihoma~~Chuks was a ~~registered~~ nurse at the DCC at all times pertinent hereto.

97.    Under color of state law, the Health Care Defendants' conduct evidenced a deliberate indifference to Plaintiff Miller's serious medical condition, and violated his rights guaranteed by the Eighth Amendment of the United States Constitution, in that they:

18

(a)   failed to or provide medical care and attention to Plaintiff Miller when he was suffering from a serious medical condition;

(b)   were negligent in providing care and attention to Plaintiff Miller, as its conduct fell below the accepted standard of care under the circumstances;

(c)   failed or refused to properly diagnose Plaintiff Miller's serious medical condition and take the reasonable steps necessary to prevent further pain and suffering;

(d)   failed or refused to schedule an examination with an outside foot specialist; and

(e)   failed to take proper and reasonable remedial measures to combat Plaintiff Miller's serious medical condition following "diagnosis" of his condition.

98.   The Health Care Defendants acted with deliberate indifference towards Plaintiff Miller's serious medical condition in that they knew of Plaintiff Miller's condition after numerous sick-call slip submissions, filed grievances, and requests for medical care made personally by Plaintiff Miller and by DCC security staff; however, the Health Care Defendants failed or refused to provide medical care or attention.

99.   As a direct and proximate result of the of the Health Care Defendants' failure to act on their knowledge of Plaintiff Miller's situation, Plaintiff Miller sustained injuries which have caused and will cause pain, suffering, disability, helplessness, inconvenience, mental and emotional distress, and a dimunition of life's pleasures.

100.  As a further direct and proximate result of the Health Care Defendants' failure to act on their knowledge of Plaintiff Miller's situation, Plaintiff Miller will require specialized medical attention, at significant expense.

101.  As a further direct and proximate result of the Health Care Defendants' failure to act on their knowledge of Plaintiff Miller's situation, Plaintiff Miller has sustained an impairment of his capacity to earn a living upon his release from the DCC.

19

## COUNT III – DUE PROCESS OF LAW VIOLATION
### (Against All Defendants)

102.    Plaintiff Miller re-alleges paragraphs 1-84 of the Second Amended Complaint as is fully set forth herein.

103.    The State of Delaware has an obligation to provide adequate medical care to individuals who are incarcerated in its prisons.

104.    Defendants failure to provide medical care constitutes punishment without due process of law, in violation of the Fourteenth Amendment of the United States Constitution.

105.    As a direct and proximate result of the acts and failures of the defendants, Plaintiff Miller sustained injuries which have caused and will cause pain, suffering, disability, helplessness, inconvenience, mental and emotional distress, and a diminution of life's pleasures.

106.    As a further direct and proximate result of the acts and failures of the defendants, Plaintiff Miller will require specialized medical attention, at significant expense.

107.    As a further direct and proximate result of the acts and failures of the defendants, Plaintiff Miller has sustained an impairment of his capacity to earn a living upon his release from the DCC.


## COUNT IV – MEDICAL NEGLIGENCE
### (Against Health Care Defendants)

108.    Plaintiff Miller re-alleges paragraphs 1-84 of the Second Amended Complaint as is fully set forth herein.

109.    At all relevant times herein, agents, servants, and employees of Defendant FCM were acting in the course and scope of their employment for Defendant FCM.

110.    Defendant and Defendant Gombeh-Alie is a physician licensed to practice medicine in the State of Delaware.

111.    At all relevant times herein, Defendant Gombeh-Alie was acting within the course and scope of her employment by Defendant FCM.

112.    Defendant ~~Ihoma~~Chuks is a ~~registered~~ nurse licensed in the State of Delaware.

113.    At all relevant times herein, Defendant ~~Ihoma~~Chuks was acting within the course and scope of her employment by Defendant FCM.

114.    During the course of his incarceration at the DCC from January, 2004 until FCM's contract as health care provider for the DCC was terminated, Plaintiff Miller was under the medical care of the Health Care Defendants.

115.    On January 27, 2004, Plaintiff Miller first notified the FCM medical staff of his foot problems.

116.    Plaintiff Miller submitted more than a dozen sick-call slips and three grievances seeking treatment for his medical condition.

117.    Defendants Gombeh-Alie and ~~Ihoma~~Chuks, and Defendant FCM, acting through its agents, servants, and employees, failed to render medical services to Plaintiff Miller in conformity with acceptable standards of care, and committed malpractice within the meaning of 18 Del. C. § 6801, in that they:

(a)    Failed to monitor Plaintiff Miller's condition once it was identified;

(b)    Failed to examine and properly diagnose Plaintiff Miller's condition;

(c)    Failed to consult with a foot specialist or podiatrist regarding Plaintiff Miller's condition;

(d)    Failed to provide orthopedic shoes to Plaintiff Miller for more than a year after Terry Hastings mediated a grievance file by Plaintiff Miller and informed him that he had been approved for orthopedic shoes;

(e)    Discontinued pain medication despite repeated submissions of sick-call slips and grievances by Plaintiff Miller complaining of pain in his feet; and

(f)    Failed to provide Plaintiff Miller with Gabapentin for his "diagnosed" condition for more than one month after it was prescribed.

21

118.     Pursuant to 18 Del. C. § 6853, Plaintiff Miller will submit an affidavit of merit from an expert witness, within 60 days of filing the Second Amended Complaint. Counsel for Plaintiff Miller has been and continues to attempt to retrieve Plantiff Miller's medical records from the DCC and schedule an examination with an expert witness.

119.     The Health Care Defendants' actions constitute continuous negligent medical treatment.

120.     Despite his attempts, Plaintiff Miller, while incarcerated at the DCC, could not in the exercise of reasonable diligence discover and identify the source of his injury.

121.     As a direct and proximate result of the acts and failures of the Health Care Defendants, Plaintiff Miller sustained injuries which have caused and will cause pain, suffering, disability, helplessness, inconvenience, mental and emotional distress, and a diminution of life's pleasures.

122.     As a further direct and proximate result of the Health Care Defendants' negligence, Plaintiff Miller will require specialized medical attention, at significant expense.

123.     As a further direct and proximate result of the Health Care Defendants' negligence, Plaintiff Miller has sustained an impairment of his capacity to earn a living upon his release from the DCC.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Miller requests with respect to Defendants:

a.     Judgment that State Defendants' acts, policies, and practices, described herein, violate Plaintiff Miller's rights under the Eighth Amendment of the United States Constitution and constitute deliberate indifference to Plaintiff Miller's serious medical needs;

b.     Judgment that Health Care Defendants' acts, policies, and practices, described herein, violate Plaintiff Miller's rights under the Eighth

22

Amendment of the United States Constitution and constitute deliberate indifference to Plaintiff Miller's serious medical needs;

c.   Judgment that defendants' acts, policies, and practices, described herein, violate Plaintiff Miller's rights under the Fourteenth Amendment of the United States Constitution;

d.   Judgment that Health Care Defendants' actions constitute medical negligence;

e.   An award of compensatory damages to be determined at trial;

f.   An award of punitive damages in an amount to punish and deter similar conduct in the future;

g.   An award of Plaintiff Miller's reasonable attorney fees in accordance with 42 U.S.C. § 1988;

h.   An order permanently restraining, enjoining or prohibiting all Defendants, in their individual and official capacities, from undertaking, enforcing, maintaining or adopting any policies, procedures, practices or acts, including, but not limited to, transferring Plaintiff Miller to any other institution without his consent during the pendency of this action, that are retaliatory in character against Plaintiff Miller for his commencement and prosecution of this action;

i.   An order requiring Defendants to diagnose and treat Plaintiff Miller, including, but not limited to, an examination by a podiatrist or other foot specialist; and

j.   All other legal and equitable relief that the Court deems just and proper.


<u>JURY DEMAND</u>

Plaintiff Miller demands a trial by jury of all issues triable as of right by a jury in this action.

Dated: ~~June 9~~September 18, 2006     FISH & RICHARDSON P.C.


By:  */s/ Sean P. Hayes*
    Sean P. Hayes (#4413)
    *hayes@fr.com*
    919 N. Market Street, Suite 1100
    Wilmington, DE 19899-1114
    Tel: (302) 652-5070

Attorney for Plaintiff
Julian A. Miller

80033913.doc

24